UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOSS WORLDWIDE LLC, d/b/a ALGO
ONLINE RETAIL,

        Plaintiff,

v.

BEAU CRABILL, THOMAS CRABILL, JR.
and ALL OUT RAW LLC,

        Defendants.

C.A. No. 19-cv-2363

| PUERTO RICO | ) | |
|---|---|---|
| | ) | ss: |
| DORADO | ) | |

## AFFIDAVIT OF BEAU CRABILL

I, Beau Crabill, declare as follows:

1. I am a twenty-year-old entrepreneur. Unless otherwise indicated, the statements made in this declaration are made based upon my own personal knowledge. If called to testify in this matter, I could and would testify to them under oath.

2. I first started selling things in elementary school. By the time I was a senior in High School, I developed a method to sell "name brand" products on Amazon, eBay, and Walmart.com.

3. I formed All Out Raw LLC ("All Out Raw") in March 2017. All Out Raw sells millions of dollars of products, primarily on Amazon, and teaches other people how to do the same.

4. Because of my tremendous success with e-commerce, people began asking me to teach them my strategy. In May 2017, I began one-on-one consultations. A few months later, in August 2017, All out Raw launched "Online Retail Mastery" webinar courses to explain all aspects of my proven Amazon selling strategy. For $997, I teach my students how to set up an Amazon business, how to get sales, how to conduct product research and sourcing, and how to find, work with, and build relationships with suppliers. Using the information taught in All Out Raw's webinars, thousands of my students have been able to substantially supplement their income, or quit their jobs entirely.

1

5.  Since August 2017, All Out Raw has produced more than 150 webinars. For the first six months, All Out Raw created the webinars exclusively in the State of Washington. In the past 16 months, All Out Raw has produced the webinars wherever my travels have taken me, including Nevada, California, Utah, Vermont, Florida, Texas, Tennessee, Puerto Rico, Europe, Australia, and Indonesia (Bali). Of the hundreds of webinars that we have produced, approximately 70% were created in Washington, 10% in Nevada, and 10% in California. As Plaintiff states in the Complaint, I created and produced a webinar in New York City on May 24, 2018.

6.  Steven Sitkowski, a long-time family friend and expert in providing in-person seminars introduced me to Mark Gonsalves in early 2018. Mr. Gonsalves was working with Ben Kotch, Sam Kotch, and Eric Kotch (collectively with Mr. Gonsalves, the "Kotch's") to build a "business education" company that taught live seminars at hotel conference rooms regarding crypto-currency, real estate, stock, and cannabis. The Kotch's wanted Amazon-selling to be part of that business. Mr. Sitkowski advised me that joining a seminar business such as the Kotch's would be beneficial because having a business partner spend money promoting and marketing my selling methods would increase my visibility and help turn me into "national brand"; I would be a household name.

7.  In February and March 2018, my dad and I were in negotiations with the Kotch's—with Mr. Sitkowski brokering the deal—by telephone and e-mail. The Kotch's represented to us that their business model was to get new customers by offering them a free in-person "previews," selling follow-up workshops/seminars at the free previews, and then selling additional products and services at the workshops. Ultimately, the Kotch's promised us that: (1) they would raise $1 million to fund marketing, advertising, and business operations for Boss Worldwide LLC d/b/a ALGO Online Retail ("ALGO"); (2) their live seminars would generate $25 million each year, 25% of which would go to All Out Raw, (3) they would find qualified coaches who would represent me and my teaching methods; (4) they would establish joint ventures with companies who had access to informational databases of customers who might have interest in attending the seminars; and (5) that they would leverage their many purported media relationships to turn me into a national brand.

8.  Those promises induced me, my dad, and All Out Raw to enter into the Operating Agreement, Sales Agreement and Licensing Agreement with the Kotch's company, Asymergy Corporation[1] on or about April 6, 2018. I was a resident of the State of Washington at the time, and executed those Agreements when I was in Utah. Tom executed those Agreements in Washington.

9.  Pursuant to those Agreements, the Kotch's were supposed to start a seminar company. Twenty-five percent of the profits of that business were owed to All Out Raw. Unfortunately, the Kotch's did not keep any of their promises. They did not raise money, use the media to market and promote my brand, or find any new customers. Instead, they abandoned their business model and tried to monetize my existing students by advertising with the only

---

[1] Asymergy Corporation is incorporated in Delaware. *See* Exhibit 1.

funds they had: the money from All Out Raw's already profitable webinar business. As majority members of ALGO, the Kotch's controlled everything—including my "name, signature, voice, image, and likeness," which they never paid for.

10. My dad and I met the Kotch's for the first time on May 21, 2018, at the Penn Club in New York City.

11. I stopped by New York City on July 23-25, 2018 to hang out with some of my friends on my way back to Washington after a trip to Europe. My friends and I went to a Yankees game and to a concert. While I was there, I also met with the Kotch's.

12. On August 22, 2018, I had lunch with Ben Kotch, Sam Kotch, and Matt Rudnitsky in Nyack, New York after a trip to Vermont and Boston, Massachusetts. We discussed with Mr. Rudnitsky whether he was interested in writing a promotional book for me.

13. Contrary to what they represented, it took the Kotch's seven months, until on or about November 3-4, 2018, to hold ALGO's first in-person seminar. And when that Los Angeles event finally occurred, it was an absolute disaster—which the Kotch's event manager admitted. A number of factors caused the seminar to go poorly, including the Kotch's failure to hire qualified coaches that knew my teaching methods and selling strategy. My students did not appreciate that they knew my methods better than the coaches who were supposed to be representing me, and did not respond well to the slick salesmen that pressured them to buy one-on-one coaching packages that cost up to $20,000.

14. At the November 2018 Los Angeles seminar, my roommate, Riley Potkonjak, was told to "film whatever he thought would look cool on social media." Mr. Potkonjak edited the video on my computer.

15. Following the Los Angeles seminar, I was furious. I learned that the Kotch's did not respect me or my brand. I was so mad that I did not attend the New York seminar on November 17-18, 2018. Instead, my dad went to observe. Neither he nor I had anything to do with marketing for the event, scheduling the hotel, or hiring coaches to teach the students.

16. In New York, the Kotch's once again broke all of their promises by repeating many of the same mistakes. The coaches were not trained or educated to accurately represent me, and the Kotch's demonstrated at the New York seminar that they were more interested in "hustling" the students than helping them grow their Amazon business. As a result, the Kotch's once again did not make any money; they sold only one coaching package. Moreover, when my dad asked the Kotch's when they were going to start marketing the seminars to new students (as opposed to my already existing webinar students), the response was, "If we had to do that, it would cost way too much."

17. Shortly after the New York seminar, we notified the Kotch's, Asymergy, and ALGO that we no longer wanted to do business with them.

3

18. On or about March 3, 2019, when I was in the State of Washington, I notified YouTube, a Delaware corporation headquartered in California, of ALGO's infringement. YouTube then issued the takedown notice that is the subject of ALGO's Complaint.

_____
Beau Crabill

SWORN TO AND SUBSCRIBED before me this 20 day of May, 2019, by Beau Crabill, whose identity I proved.

_____
Notary Public, Puerto Rico
Printed Name: _____
My Commission Expires: _____

_____
Signature

_____
Printed Name

4