UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOSS WORLDWIDE LLC, d/b/a ALGO
ONLINE RETAIL,

                              Plaintiff,

              v.                                    C.A. No. 19-cv-2363 (VLB)

BEAU CRABILL,

                              Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................... 5

I.     The Complaint Should Be Dismissed for Failure to State a Claim ................................... 5

     A.     Legal Standard Under Rule 12(b)(6) ................................................................... 6

     B.     The Amended Complaint Fails to Allege Plaintiff's Copyright Ownership........... 7

     C.     The Amended Complaint Alleges That Crabill Had a Subjective Good Faith Belief That Plaintiff's Posting of the Video Was Not Authorized ........................ 9

II.     The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction............... 14

     A.     The Parties Agreed to Arbitrate Plaintiff's DMCA Claim ................................... 15

           1.     The Operating Agreement Contains a Valid Agreement to Mediate and Arbitrate This Dispute............................................................................... 16

           2.     Plaintiff's Claim Falls Within the Scope of the Arbitration Provision..... 17

     B.     Plaintiff's DMCA Claim Is Arbitrable ................................................................ 18

III.     The Complaint Should Be Dismissed for Lack of Personal Jurisdiction......................... 19

     A.     Legal Standard Under Rule 12(b)(2) ................................................................... 19

     B.     This Court Lacks Jurisdiction Under New York's Long-Arm Statute ................. 20

           1.     Personal Jurisdiction Over Crabill Fails Under the First Prong of New York's Long-Arm Statute ....................................................................... 20

                 a.     Crabill Did Not Hold Himself Out as a New York-Based Entity. 21

                 b.     Crabill Does Not Service Customers in New York ...................... 23

           2.     Personal Jurisdiction Over Crabill Fails Under the Second and Third Prongs of New York's Long-Arm Statue ................................................. 25

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurate Grading Quality Assurance, Inc. v. Thorpe*,
   No. 12 CIV. 1343 ALC, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ..................................7

*ACE Capital RE Overseas Ltd. v. Cent. United Life Ins. Co.*,
   307 F.3d 24 (2d Cir. 2002).................................................................................17, 18

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) .........................................................................................24

*Aquiline Capital Partners LLC v. Finarch LLC*,
   861 F. Supp. 2d 378 (S.D.N.Y. 2012)..............................................................20, 21

*Arciniaga v. Gen. Motors Corp.*,
   460 F.3d 231 (2d Cir. 2006).....................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................1, 6, 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................................14

*Barricade Books, Inc. v. Langberg*,
   No. 95 Civ. 8906, 2000 WL 1863764 (S.D.N.Y. Dec. 19, 2000).............................25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................1, 6, 7, 10

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)................................................................................22, 23

*Borrero v. Ruppert Hous. Co.*,
   No. 08 CV 5869, 2009 U.S. Dist. LEXIS 52174 (S.D.N.Y. June 19, 2009) ...........14

*Boss Worldwide LLC v. Beau Crabill*,
   No. 033290/2019 (N.Y. Sup. Ct. Rockland Cnty. 2019), Dkt. No. 13 ...................16

*Cabell v. Zimmerman*,
   No. 09 CIV. 10134(CM), 2010 WL 996007 (S.D.N.Y. Mar. 12, 2010) ........................ *passim*

*Cartagena Enters. v. J. Walter Thompson Co.*,
   No. 13 Civ. 4238, 2013 U.S. Dist. LEXIS 149597 (S.D.N.Y Oct. 16, 2013) .................14, 15

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*,
    930 F.2d 228 (2d Cir. 1991)..................................................................................17

*Cole v. Pearson Educ. Inc.*,
    No. 10 Civ. 7523, 2011 U.S. Dist. LEXIS 110603 (S.D.N.Y Sept. 28, 2011) .................14, 19

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985).............................................................................................15

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Investments*,
    21 A.D.3d 90 (N.Y. App. Div. 2005) ...................................................................23

*DH Servs., LLC v. Positive Impact, Inc.*,
    2014 WL 496875 (S.D.N.Y. Feb. 5, 2014)...........................................................22

*Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).................................................................................20

*Ecological Labs., Inc. v. BluePlanet, LLC*,
    No. 601737/15, 2015 N.Y. Misc. LEXIS 5301 (N.Y. Sup. Ct. June 17, 2015)......................16

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
    194 F.Supp.3d 263 ..............................................................................................3

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)..............................................................................15

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)..............................................................................21

*Handshoe v. Perret*,
    No. 1:15CV382-HSO-JCG, 2018 WL 4374188 (S.D. Miss. Sept. 13, 2018) ........................13

*Hartford Accident & Indem. Co.*,
    246 F.3d at 226 ...................................................................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)..........................................................................................15

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017).....................................................................9

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)................................................................................7

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)........................................................................15, 18

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ................................................................................9

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003)...........................................................................19, 20

*Mantello v. Hall*,
   947 F. Supp. 92 (S.D.N.Y 1996).........................................................................25

*Markowits v. Friedman*,
   144 A.D.3d 993 (N.Y. App. Div. 2016) ...............................................................17

*Marubeni Am. Corp. v. M/V "OHFU" Her Engines*,
   No. 94 Civ. 6251, 1996 U.S. Dist. LEXIS 2173 (S.D.N.Y. Feb. 27, 1996) ............15

*Minella v. Restifo*,
   124 A.D.3d 486 (N.Y. App. Div. 2015) ...............................................................22

*Moorning-Brown v. Bear, Stearns & Co.*,
   No. 99 Civ. 4130, 1999 U.S. Dist. LEXIS 18051 (S.D.N.Y. Nov. 23, 1999) .........18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)..........................................................................................14, 17

*Nau v. Vulcan Rail & Constr. Co.*,
   286 N.Y. 188 (1941) ...........................................................................................17

*Ouellette v. Viacom Int'l, Inc.*,
   No. CV 10–133–M–DWM–JCL, 2012 WL 1435703 (D. Mont. Apr. 25, 2012)...............6, 13

*Packeteer, Inc. v. Valencia Sys., Inc.*,
   No. C-06-07342, 2007 U.S. Dist. LEXIS 21348 (N.D. Cal. Mar. 6, 2007).............19

*PaineWebber Inc. v. WHV, Inc.*,
   No. 95 Civ. 0052, 1995 WL 296398 (S.D.N.Y. May 16, 1995)..............................24

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) .........................................................................................22

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)............................................................................................17

*RLP Ventures LLC v. All Hands Instruction NFP*,
   No. 18 Civ 3988, 2019 WL 1316030 (S.D.N.Y. Mar. 22, 2019) ...........................22

*Ross v. Am. Express Co.*,
   478 F.3d 96 (2d Cir. 2007)..................................................................................14

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
  391 F.3d 1000 (9th Cir. 2004) ................................................................9, 10

*S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*,
  745 F.2d 190 (2d Cir. 1984)...............................................................................18

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006)........................................................................21, 24

*Spinelli v. NFL*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015)....................................................................19

*TechnoMarine SA v. Jacob Time, Inc.*,
  No. 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012)....................7

*Triangle Equities Inc., v. Listokin*,
  13 A.D.3d 269 (N.Y. App. Div. 2004) ................................................................16

*UMG Recordings, Inc. v. Augusto*,
  558 F.Supp.2d 1055 (C.D. Cal. 2008) ................................................................13

*V Cars, LLC v. Isr. Corp.*,
  902 F. Supp. 2d 349 (S.D.N.Y. 2012)..................................................................20

*Volpe v. Am. Language Commc'n Center, Inc.*,
  200 F. Supp. 3d 428 (S.D.N.Y. 2016), *aff'd*, No. 16-2869-CV, 2017 WL
  2416908 (2d Cir. June 5, 2017) ...........................................................................3

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001).................................................................................20

*Zafar v. Fast Track Leasing, LLC*,
  162 A.D.3d 1100 (N.Y. App. Div. 2018) .............................................................17

**Statutes**

9 U.S.C. § 1 ..............................................................................................................14

9 U.S.C. § 2 ..............................................................................................................14

17 U.S.C. § 101 ..........................................................................................................8

17 U.S.C. § 201(a) ......................................................................................................8

17 U.S.C. § 201(b) ......................................................................................................8

17 U.S.C. § 204 ..........................................................................................................8

17 U.S.C. § 512(c) ......................................................................................................4

17 U.S.C. § 512(g) ................................................................................................4, 19

17 U.S.C. § 512(f) .................................................................................................*passim*

N.Y. C.P.L.R. § 302 ..................................................................................................20

N.Y. C.P.L.R. § 302(a) .............................................................................................20

**Other Authorities**

Fed. R. Evid. 201(b) ...............................................................................................3, 7

Fed. R. Civ. P. 12(b)(1) .......................................................................................14, 25

Fed. R. Civ. P. 12(b)(2) ...............................................................................19, 20, 25

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 6, 25

**INTRODUCTION**

Conceding that its original complaint (*see* ECF No. 1) did not meet the pleading standards of the New York long-arm statute or *Iqbal*, *Twombly*, and their progeny, Plaintiff filed its First Amended Complaint ("Amended Complaint"), asserting new factual allegations in support of its claim for jurisdiction and misrepresentation under Section 512(f) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f)—the sole cause of action in this case.  (*See generally* ECF No. 27.)  Nonetheless, Plaintiff has again failed to (1) state a claim upon which relief can be granted, (2) establish subject matter jurisdiction, and (3) state a basis for personal jurisdiction.  The Amended Complaint includes only bare, conclusory allegations without any factual support for the claim that Beau Crabill ("Crabill") made a knowing misrepresentation in a DMCA takedown notice. In fact, Plaintiff's factual allegations actually make clear that Crabill's takedown notice was submitted with good reason.  Because the Court cannot draw a reasonable inference that Crabill is liable for the misconduct alleged, the DMCA claim is implausible on its face and ripe for dismissal with prejudice under Rule 12(b)(6).

While Plaintiff characterizes this action as a DMCA dispute, it is really a contract dispute involving "business divorce."  Pursuant to the parties' agreements, Plaintiff and Crabill mediated their contractual dispute on March 28, 2019.  While mediation did not result in a settlement agreement, the parties were required to submit that dispute to arbitration.  In violation of the agreements, Plaintiff failed to mediate and arbitrate this DMCA claim.  Accordingly, it should be dismissed for lack of subject matter jurisdiction.  Alternatively, the DMCA claim should be dismissed for lack of personal jurisdiction over Crabill.

**BACKGROUND**

Crabill, now the sole defendant, is a 20-year-old entrepreneur.  (Declaration of Beau Crabill ("Decl.") ¶ 1.)  Crabill has been selling products on e-commerce platforms since he was in

1

elementary school, and while in high school, created a method to sell "name brand" goods on e-commerce platforms such as Amazon and eBay.  (*Id.* ¶ 2.)  In March 2017, Crabill formed All Out Raw LLC ("All Out Raw"), which has sold millions of dollars of goods online, primarily on Amazon, and teaches others to do the same.  (*Id.* ¶ 3.)  In May 2017, following his phenomenal success, Crabill started offering one-on-one consultations to teach his sales strategy and later launched a highly successful webinar series.  (*Id.* ¶ 4.)  Since August 2017, All Out Raw has produced over 150 webinars, and Crabill has accumulated thousands of clients.  (*Id.* ¶¶ 4–5.)

In early 2018, Plaintiff Boss Worldwide LLC d/b/a/ ALGO Online Retail ("Plaintiff" or "ALGO") approached Crabill regarding a potential business venture that would utilize Crabill's successful online presence and fame to bring clients to *in-person* training seminars.  (*Id.* ¶¶ 6–7; *see also* ECF No. 27 ¶¶ 7–9.)  The parties entered into a series of business agreements on or about April 6, 2018, and Crabill became "one of the public faces of ALGO."  (ECF No. 27 ¶¶ 9–13.)

Prior to any interaction with Plaintiff, Crabill's friend and roommate, a freelance videographer named Riley Potkonjak ("Potkonjak") (Decl. ¶ 14), created video content for Crabill's YouTube account and other social media through which Crabill promotes and offers his services.  Crabill introduced Plaintiff to Potkonjak in or about the late summer of 2018.  (ECF No. 27 ¶ 52.)  In September 2018, Plaintiff received a W-9 tax form signed by Potkonjak, and made two payments to Potkonjak on September 24 and October 15, 2018.  (*Id.* ¶¶ 53–55.)

A month later, in early November 2018, the parties "co-promoted" and held their "first joint live event" in Los Angeles.  (*Id.* ¶ 32.)  Potkonjak shot footage of the event, including footage depicting Crabill.  (*See id.* ¶¶ 56, 67–68.)  Potkonjak edited the video on Crabill's computer.  (Decl. ¶ 14.)  On November 7, 2018, a video titled "ALGO Newport Beach" depicting footage of the November 3–4 event was uploaded to Crabill's personal "Beau Crabill" YouTube account and

accessible at a publicly available webpage: http://www.youtube.com/watch?v=29nyU8mNU7c.[1]

According to Plaintiff (but unbeknownst to Crabill), Potkonjak also provided the video to Plaintiff,

on or about November 9, 2018 (ECF No. 27 ¶ 58).  Notably, Plaintiff does not allege that Crabill

knew that Potkonjak provided the video to Plaintiff in November 2018.  In fact, at that time, the

relationship between Crabill and Potkonjak was splintering.  "[Crabill] complained to Plaintiff

about Potkonjak's work ethic while creating the video [of the November 2018 event]" and

"requested that [Plaintiff] cease making monthly payments to Potkonjak and find a new

videographer."  (*Id.* ¶ 59.)  Based on Plaintiff's pleading, it is clear that Plaintiff did not pay

Potkonjak after the event.  Importantly, Plaintiff's pleading also makes clear that Plaintiff never

obtained a written agreement from Potkonjak assigning the copyright in the video to Plaintiff.

The business relationship between the parties fell apart shortly thereafter, in or about

December 2018, when Crabill realized, through Plaintiff's inability to put together a successful

live event, that Plaintiff was not contributing positively to the business.  Crabill terminated his

business relationship with Plaintiff in January 2019.  (*Id.* ¶ 47.)

Thereafter, at a time prior to February 26, 2019, Plaintiff edited the video it allegedly

obtained from Potkonjak nearly four months prior by substituting the music and deleting footage

that depicted Crabill.  (*See id.* ¶¶ 58, 60–61.)  Despite never having acquired ownership of the

copyright in the video from Potkonjak, Plaintiff proceeded to post the video to YouTube on or

---

[1] *See* Decl. ¶ 20, Ex. A.  The Court may take judicial notice of the upload date of the video displayed at http://www.youtube.com/watch?v=29nyU8mNU7c. This information is capable of accurate and ready determination, as it is displayed on Crabill's public YouTube webpage, the authenticity of which is not in dispute.  *See* Fed. R. Evid. 201(b)(2); *Volpe v. Am. Language Commc'n Center, Inc.*, 200 F. Supp. 3d 428, 430–31 (S.D.N.Y. 2016), *aff'd*, No. 16-2869-CV, 2017 WL 2416908 (2d Cir. June 5, 2017) (citations omitted) ("[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination."); *see, e.g.*, *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 295 at n. 27 (on a 12(b)(6) motion to dismiss, taking judicial notice of figures drawn from a screenshot of defendant's website where defendant did not dispute any of the factual material represented on its website).

about February 26, 2019.  (*Id.* ¶ 60.)  Crabill is depicted in the video, including vis-à-vis a large, identifiable photo of Crabill visible in several shots.  (*Id.* ¶¶ 67–68.)  Since Plaintiff's posting of the video occurred *months after* Crabill received the video from Potkonjak, the video was already posted on Crabill's personal YouTube account, and the parties' relationship had soured, Crabill was understandably surprised to discover the video on Plaintiff's public YouTube account.

Pursuant to Section VII(4) of the Operating Agreement, in February 2019, counsel for the parties began discussing "the terms and procedure" for mediating ALGO's alleged breach of contract claims.  Crabill issued the DMCA takedown notice subsequent to those discussions. (Decl. ¶ 20.)  On March 3, 2019, Plaintiff "received an email from YouTube.com stating that Crabill had filed a takedown request pursuant to the DMCA."[2]  (ECF No. 27 ¶ 69.)  In an email exchange between counsel for the parties over the following week, Plaintiff's counsel requested that Crabill withdraw the takedown request and threatened a § 512(f) lawsuit.  In response, Crabill's counsel noted his understanding that "[Crabill] created the video, and that [Plaintiff] copied it, shortened it, and posted it on YouTube."  (ECF No. 27-6, Ex. F.)

In violation of the mediation and arbitration provision, ALGO commenced this action while the parties were working with the American Arbitration Association to select a mediator. (ECF No. 27-5.)  The parties attended a full-day mediation session at Fish & Richardson's New York office on March 28, 2019.  Because this action was already pending, the parties did not mediate the claims herein.  Rather, the parties mediated ALGO's alleged breach of contract claims.

---

[2] The DMCA is part of the Copyright Act, 17 U.S.C. § 101 *et seq*.  It creates a safe harbor for online service providers against copyright infringement liability as long as they remove infringing material identified to it under the mechanism established by the DMCA.  *See* 17 U.S.C. § 512.  When a service provider obtains a notice of copyright infringement, known as a "takedown notice," it must remove the infringing material.  17 U.S.C. § 512(c).  The service subscriber who posted the material may then challenge the removal through a counter notice informing the service provider that the material was improperly removed.  17 U.S.C. § 512(g).  Upon receipt of a counter notice, the service provider must provide a copy of the counter notice to the person who submitted the takedown notice and replace the removed material within a certain time frame.  17 U.S.C. § 512(g)(2).

Mediation was ultimately unsuccessful.  Under Section VII(4), "[i]f good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association." *Id.*[3]  Instead of mediating and arbitrating its DMCA claim pursuant to Section VII(4), ALGO commenced this action.

This case rests on a single cause of action, i.e., that Crabill's "takedown notice contained misrepresentations and inaccurate information" (*id.* ¶ 71), which, according to Plaintiff, gives rise to a claim for damages under § 512(f) of the DMCA.  This theory is—again—legally unsound.  As best as Plaintiff's claim can be understood, Crabill's "takedown notice contained misrepresentations and inaccurate information" because Crabill "knew . . . that [Plaintiff] was the copyright owner or, at the very least, was authorized and licensed . . . to use the video" sought to be taken down (*id.* ¶ 73), and "even if [Plaintiff] did not have the right to use Beau Crabill's image," Crabill's objection to Plaintiff's use of his name and likeness in the video "has nothing to do with copyright, and therefore could not justify a DMCA takedown notice." (*Id.* ¶¶ 75–76.)  Because the required basis for this claim, namely, that Crabill actually knew he was making misrepresentations, simply does not exist, any further amendment would be futile.  Plaintiff has no viable cause of action, nor does it have any reason to file suit in this Court.

The Amended Complaint should be dismissed without leave to amend.

## ARGUMENT

### I.    The Complaint Should Be Dismissed for Failure to State a Claim

Section 512(f) of the DMCA applies only in extremely narrow circumstances and imposes

---

[3] Instead of seeking to arbitrate, ALGO brought breach of contract claims and other claims in the New York Supreme Court.  *See Boss Worldwide LLC v. Beau Crabill et al.*, Index No. 033290/2019 (Sup. Ct. Rockland County).  Crabill's Motion to Dismiss that Complaint and Compel Arbitration is currently pending before the Honorable Paul I Marx.

a "high standard" on claimants. *Ouellette v. Viacom Int'l, Inc.*, No. CV 10–133–M–DWM–JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012.  A § 512(f) claim arises when a defendant "knowingly materially misrepresents . . . that material or activity is infringing" in a takedown notice sent under the DMCA, and the plaintiff "is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."  17 U.S.C. § 512(f).

The Amended Complaint alleges that Crabill knowingly made material[4] misrepresentations in a DMCA takedown notice he submitted to YouTube.  (*See generally* ECF. No. 27.)  However, Plaintiff fails to plausibly plead a key element of a § 512(f) claim—that the alleged misrepresentations were made with Crabill's actual knowledge while submitting the takedown.[5] *See* 17 U.S.C. § 512(f); *Cabell*, 2010 WL 996007, at *4.

## A.  Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) mandates dismissal when a plaintiff has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Dismissal is appropriate when, as here, a plaintiff fails to offer sufficient factual allegations

---

[4] For purposes of this Motion, Crabill does not dispute that the alleged conduct is material.  Crabill reserves the right to dispute materiality elsewhere in the proceedings.

[5] The allegation in paragraph 71 of the Amended Complaint that "Defendant's takedown notice contained misrepresentations and inaccurate information, in violation of 17 U.S.C. § 512(f)" is a bald legal conclusion that the Court need not accept as true.

that make its asserted claims plausible. *Twombly*, 550 U.S. at 570. The plaintiff must provide the grounds for its entitlement to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. A complaint that sets forth only "naked assertion[s]" devoid of "further factual enhancement" is insufficient. *Id.* at 557. While the Court must accept as true all material allegations in the complaint, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not accepted as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Further, "[a] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Accurate Grading Quality Assurance, Inc. v. Thorpe*, No. 12 CIV. 1343 ALC, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013) (citation omitted). "[U]nder Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (quoting Fed. R. Evid. 201(b)). For example, "[t]he Court may take judicial notice of the fact that a publicly accessible website contains certain information." *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 CIV. 0790 KBF, 2012 WL 2497276, at *1 (S.D.N.Y. June 22, 2012). Accordingly, "unless a plaintiff's well-pleaded allegations have 'nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed.'" *Cabell v. Zimmerman*, No. 09 CIV. 10134(CM), 2010 WL 996007, at *2 (S.D.N.Y. Mar. 12, 2010) (quoting *Twombly*, 55 U.S. at 570).

### B. The Amended Complaint Fails to Allege Plaintiff's Copyright Ownership

Plaintiff's allegation that Crabill did not have a good faith belief that Plaintiff's use of the video was not authorized by the copyright owner fails to plausibly plead a misrepresentation

7

because it is based entirely on conclusory assertions that Plaintiff is the copyright owner, which are contradicted by other allegations in the Amended Complaint.  For example, Plaintiff alleges it "is the owner of the copyright in the video footage and the edited video" presumably because "the video was created for [Plaintiff], paid for by [Plaintiff], and . . . [Plaintiff is] the copyright owner." (ECF No. 27 ¶¶ 62, 73).  However, there are no ***facts*** in the Amended Complaint plausibly alleging that Plaintiff owns any copyright in the video, as was the case in Plaintiff's prior complaint.

In fact, when accepting the well-pleaded facts in the Amended Complaint as true, and drawing all inferences in Plaintiff's favor, the alleged facts suggest that ***Potkonjak***—the videographer and editor of the video—owns the copyright to the video.  Under the Copyright Act, "[c]opyright in a work . . . vests initially in the author or authors of the work."  17 U.S.C. § 201(a). The Amended Complaint alleges that Potkonjak is the author of the video.  (ECF No. 27 ¶¶ 56– 62.)  Although the statute allows for a copyright to vest in a non-author/third party "[i]n the case of a work made for hire," (17 U.S.C. § 201(b)), *i.e.*, when the work is "prepared by an employee within the scope of his or her employment," or is "specially ordered or commissioned [under certain circumstances and] the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire" (17 U.S.C. § 101), there are ***no*** facts averred in the Amended Complaint to suggest that this is the case.  *First*, Potkonjak was not an employee. To the contrary, the Amended Complaint alleges that Potkonjak was a W-9 independent contractor. (ECF No. 27 ¶ 54.)  *Second*, the Amended Complaint is silent on whether Potkonjak and Plaintiff "expressly agree[d] in a written instrument signed by them that the work shall be considered a work made for hire" (17 U.S.C. § 101).  *Third*, there are no other facts averred that ALGO owns the copyright in the video by another method, such as an assignment or transfer of copyright, which also requires a signed writing (*see* 17 U.S.C. § 204).  To be clear, Plaintiff's physical possession

of a copy of the video does not equate to copyright ownership.  Thus, accepting the allegations as true, the Amended Complaint avers that Potkonjak—not Plaintiff—is the copyright owner.

### C.      The Amended Complaint Alleges That Crabill Had a Subjective Good Faith Belief That Plaintiff's Posting of the Video Was Not Authorized

Plaintiff also fails to plausibly plead that Crabill submitted a knowingly false takedown notice.  While the Second Circuit does not appear to have spoken on the subject, courts in this Circuit have followed Ninth Circuit precedent holding that, in submitting a takedown notification, "a copyright holder need only form a ***subjective*** good faith belief that a use is not authorized." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (emphasis added)).  "In other words, a copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken." *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) (citing *Lenz*, 815 F.3d at 1154); *accord Rossi*, 391 F.3d at 1005 ("A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.").  Thus, "as a prerequisite to liability under section 512(f), a defendant must have *actual knowledge* that it is making a misrepresentation of fact."  *Cabell*, 2010 WL 996007, at *4 (citation omitted) (emphasis in original).

The Amended Complaint alleges that Crabill "did not have a *good faith belief* that the use of the video was not authorized by the copyright owner, and therefore made a misrepresentation to YouTube" and "knew that [Plaintiff's] use of the video was authorized by the copyright owner" based on two alternative theories: (1) because "Defendant knew . . . the video was created for [Plaintiff], paid for by [Plaintiff], and that [Plaintiff] was the copyright owner"; and (2) because "Defendant knew that [Plaintiff] . . . , at the very least, was authorized and licensed by Potkonjak

to use the video by virtue of the relationship between Potkonjak and [Plaintiff]."  (ECF No. 27 ¶ 73 (emphasis added).)[6]  Plaintiff fails to plead sufficient facts to support either theory.

Plaintiff's *first* "copyright ownership" theory of actual knowledge fails for multiple reasons, including for the reason discussed above, *i.e.*, that Plaintiff is not the copyright owner. Since there are no facts supporting Plaintiff's allegation of copyright ownership, it follows then that there is no factual basis for Plaintiff's allegation that Crabill "knew that [Plaintiff's] use of the video was authorized by the copyright owner because. . .  [Plaintiff] was the copyright owner." (ECF No. 27 ¶ 73.)  Crabill knew of no such thing.  He could not *knowingly* make a material misrepresentation because the facts as pleaded do not support a misrepresentation based on Plaintiff's copyright ownership in the first place.  Even a quick read of the Amended Complaint is enough to see that the allegations of Crabill's actual knowledge of the alleged misrepresentation are based upon pure speculation and misleading "facts" that imply that Plaintiff is the copyright owner of the video, but which actually aver that, under the law, Plaintiff is not the copyright owner.

What Plaintiff's new allegations demonstrate is that, when Crabill submitted the takedown notice, he subjectively believed he owned the copyright in the video and that he had a good faith belief that Plaintiff was not authorized to use the video when he submitted the takedown notice. As stated above, under § 512(f), a plaintiff must demonstrate that defendant had "actual knowledge" of the misrepresentation—"an unknowing mistake" will not suffice.  *Rossi*, 391 F.3d at 1005.  Plaintiff misunderstands this requirement.

In particular, Exhibit F to the Amended Complaint shows that just days after Crabill submitted the takedown notice, he told his attorney that that "[he] created the video, and that

---

[6] Plaintiff's statement that "Defendant knew at the time he caused the takedown notice to be sent that it contained material misrepresentations" (*id.* ¶ 85) is a "formulaic recitation" of the knowledge requirement that fails to meet the pleading standard.  *Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do").

[Plaintiff] copied it, shortened it, and posted it on YouTube." The only reasonable inference to draw from this statement is that Crabill subjectively believed that *he* owned certain rights in the video and that Plaintiff's use was unauthorized. Furthermore, the Amended Complaint explicitly alleges that Crabill appears in the video posted by Plaintiff. (ECF No. 27 ¶¶ 67–68). Notably, this "appearance" by Crabill in the video posted to Plaintiff's YouTube channel occurred about two months ***after*** Crabill ended his business relationship with Plaintiff. (*Id.* ¶¶ 46–47, 60). Given the parties' business dispute, of course Plaintiff's posting of the promotional video—for the first time ever in late February 2019 despite allegedly having a copy of it for several months (*see id.* ¶ 60)— came as an unwelcome surprise to Crabill and was considered an act of provocation as well as a violation of his rights. The timing of Plaintiff's post, which is well-pleaded, is particularly telling of Plaintiff's motivation to post the video as well as explains Crabill's reaction to it.

The Amended Complaint supports Crabill's good faith. It alleges that Crabill's takedown notice was based, at least in part, on his objection to Plaintiff's use of his image in the video, which Crabill deemed to be unauthorized. (*See id.* ¶¶ 75–75 (citing ECF No. 27-6, Ex. F) (email correspondence between counsel for the parties in which Crabill's counsel stated that Crabill's "head and face" appear in the video and that, due to the termination of their business relationship, Crabill objected to Plaintiff's use of his "name, image, or likeness")). Plaintiff's assertion that "[t]his argument has nothing to do with copyright, and therefore could not justify a DMCA takedown notice" (ECF No. 27 ¶ 76) confirms that there was an argument and therefore a reason for Crabill to send the takedown. Plaintiff's concession that "*even if it did not* [have the right to depict Crabill in the video], Defendant's remedies for such use would sound in right of publicity or breach of contract . . ." (*id.* ¶ 75 (emphasis added)) further pleads the existence of a viable dispute, or at least a viable reason for Crabill to view Plaintiff's use the video as unauthorized.

In *Cabell v. Zimmerman*, a court in this District dismissed a similar claim that defendant interfered with plaintiff's right to post a video on YouTube because plaintiff failed to adequately allege that defendant actually knew it was misrepresenting facts when he sent a takedown notice to YouTube.  2010 WL 996007, at *1, *4.  Just like Crabill, the *Cabell* defendant submitted the takedown notice under the mistaken belief that the disputed video was infringing.  *Id.* at *1, *4–5.  And, similar to Plaintiff, the *Cabell* plaintiff asserted that defendant failed to "perform the proper due diligence to back up its claim that Plaintiff was a copyright infringer."  *Id*. at *4.  In the complaint, the *Cabell* plaintiff relied on an email defendant sent days after the takedown notice explaining that he acted based on an erroneous claim that plaintiff's video was unauthorized.  *Id.* at *4–5.  However, the court found that plaintiff's allegations merely suggested that, "while Defendant should have known the real facts, [it] did not know them, and so lacked actual knowledge that it was misrepresenting Plaintiff's authority to post the video on YouTube."  *Id.* at *4.  Notably, the court explained that plaintiff alleged "facts that negate[d] any . . . inferences" that defendant knew it was misrepresenting the facts when it stated to YouTube that the video was infringing.  *Id.*  Because plaintiff failed to plead the knowledge prerequisite to liability under § 512(f)—that "defendant must have *actual knowledge* that it is making a misrepresentation of fact"—the court dismissed the claim.  *Id.* (emphasis in original).

The same result is inevitable here.  Similar to the *Cabell* plaintiff, Plaintiff fails to meet the actual knowledge requirement of § 512(f).  Plaintiff's allegations that Crabill submitted a takedown notice to YouTube based on the mistaken assumption that Plaintiff's unauthorized use of his image and his involvement in the creation of the video gave rise to a copyright infringement claim do *not* establish that he possessed actual knowledge of the alleged misrepresentation.  To the contrary, these allegations demonstrate that Crabill acted with the subjective, good faith belief

that, in March 2019, he owned rights in the video and that Plaintiff's unauthorized use of a video containing his image constituted copyright infringement, thus contradicting any claim that Crabill *knowingly* made a misrepresentation. Because the Amended Complaint contains no well-pleaded facts to plausibly infer Crabill's actual knowledge of the alleged misrepresentation, like the complaint in *Cabell*, the Court should dismiss Plaintiff's claim. *Id.* at *4–5; *see Ouellette*, 2012 WL 1435703, at * 3 (finding dismissal of plaintiff's Section 512(f) claim appropriate where plaintiff "present[ed] no facts demonstrating that [defendant *actually knew* that his videos were [non-infringing] but nevertheless issued the takedown notice" and therefore "faile[d] to plead factual allegations that meet the subjective standard") (emphasis added).[7]

Further, Plaintiff's *second* "authorization" theory of actual knowledge similarly fails because there are no factual allegations to support a reasonable inference that Crabill had any knowledge of Plaintiff's relationship with Potkonjak at the time he submitted the takedown notice, which was, notably, and as discussed above, after the parties' business relationship ended. More specifically, Plaintiff fails to allege that Crabill *knew* that Potkonjak had given a copy of the video at issue to Plaintiff, or knew anything about Potkonjak's alleged "authorization" or "license." Plaintiff's allegations are conclusory and rely on unsupportable inferences.[8] Accordingly, Plaintiff cannot rely on its "authorization" theory to plead the actual knowledge element.

For these reasons, Count I of the Amended Complaint should be dismissed.

---

[7] *See also Handshoe v. Perret*, No. 1:15CV382-HSO-JCG, 2018 WL 4374188, at *9 (S.D. Miss. Sept. 13, 2018) (recognizing that, under § 512(f), "[e]ven if [defendant] acted unreasonably and made an unknowing mistake in his submission of the online form to YouTube," plaintiff was still required to establish that defendant made a *knowing* misrepresentation when he submitted the takedown notice at issue); *UMG Recordings, Inc. v. Augusto*, 558 F.Supp.2d 1055, 1065 (C.D. Cal. 2008) (finding that defendant possessed a subjective, good faith belief for purposes of §512(f) where defendant submitted the takedown notice at issue under the mistaken belief that plaintiff's unauthorized sale of defendant's goods gave rise to a copyright infringement claim).

[8] ECF 27 ¶ 73; *see also id.* ¶ 63 ("Even if Potkonjak were to contest ownership of the copyright or copyrights, the circumstances are such that ALGO at the very least is authorized by Potkonjak to use the footage and the Promotional Video, and had the right to distribute them on YouTube."); *id.* ¶ 65 ("Mr. Crabill knew that Plaintiff had authorized [Plaintiff] to use the footage and the edited Promotional Video.").

**II.    The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction**

The Amended Complaint should be dismissed because Plaintiff's sole claim—misrepresentation under § 512(f) of the DMCA—must be mediated and arbitrated pursuant to the parties' agreement.  *See Cole v. Pearson Educ. Inc.,* No. 10 Civ. 7523, 2011 U.S. Dist. LEXIS 110603, at *16-17 (S.D.N.Y Sept. 28, 2011) (dismissing complaint because all claims were within the scope of the arbitration clause)*; Borrero v. Ruppert Hous. Co.*, No. 08 CV 5869, 2009 U.S. Dist. LEXIS 52174, at *3 (S.D.N.Y. June 19, 2009) (explaining that "courts have the discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated" (quoting *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001)).[9]

The Federal Arbitration Act ("the FAA") applies to any contract "evidencing a transaction involving commerce."  United States Arbitration Act, Pub. L. No. 68-401, 43 Stat. 883, at 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983) ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . .").  The FAA defines "commerce," in relevant part, as "commerce among the several States."  9 U.S.C. § 1.  The FAA applies to this action because the Agreements involve commerce.  The parties contracted to provide goods and services, such as materials and on-line and in-person instruction, to customers in different states. (ECF No. 27 ¶ 13.)

Arbitration "is strictly a matter of contract."  *Ross v. Am. Express Co*., 478 F.3d 96, 99 (2d Cir. 2007) (citation omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted) (the FAA reflects the "fundamental principle that arbitration is a matter of contract," and "courts must place arbitration agreements on equal footing with other contracts").

---

[9] "Rule 12(b)(1) provides for the dismissal of a claim when the federal court lacks jurisdiction over the subject matter." *Cartagena Enters. v. J. Walter Thompson Co*., No. 13 Civ. 4238, 2013 U.S. Dist. LEXIS 149597, at *8 (S.D.N.Y Oct. 16, 2013).

The FAA requires federal courts to "rigorously" uphold and enforce "privately made agreements to arbitrate" as they would any contract. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219, 221 (1985); *see also Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 529 (2019) (unanimously reaffirming, "courts must enforce arbitration contracts according to their terms").

The Second Circuit has "often and emphatically applied" the strong federal policy in favor of arbitration. *Arciniaga v. Gen. Motors Corp*., 460 F.3d 231, 234 (2d Cir. 2006) (citation omitted); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (holding that the FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution" (citation omitted).  "Because of th[is] policy favoring arbitration, the burden of persuasion falls on the party attempting to escape an arbitration agreement, not the one attempting to enforce it." *Marubeni Am. Corp. v. M/V "OHFU" Her Engines*, No. 94 Civ. 6251, 1996 U.S. Dist. LEXIS 2173, at *227 (S.D.N.Y. Feb. 27, 1996); *see also Cartagena Enters.*, 2013 U.S. Dist. LEXIS 149597 at *8 (on 12(b)(1) motion "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence").

In determining whether to compel arbitration under the FAA, a court considers: (1) "whether the parties agreed to arbitrate"; (2) whether the claims fall within the scope of the agreement to arbitrate; (3) "if federal statutory claims are asserted, whether Congress intended [such] claims to be nonarbitrable"; and (4) whether, "if the court concludes that some, but not all, of the claims asserted are arbitrable . . . to stay the balance of the proceedings pending arbitration." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

## A.     The Parties Agreed to Arbitrate Plaintiff's DMCA Claim

The broad mediation and arbitration provision in the Operating Agreement shows a clear, explicit, and unequivocal intent to resolve "any dispute" of the members through alternative dispute resolution.  Section VII(4) states:

> In any dispute over the provisions of this operating agreement and in other disputes among the members, if the members cannot resolve the dispute to their mutual satisfaction, the mater shall be submitted to mediation. . . . If good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association.

(ECF No. 27-1, § VII(4).)  In light of this plain and clear contractual language, Plaintiff does not (because it cannot) argue that it did not agree to arbitration following the unsuccessful mediation of its DMCA claim.[10] (*Id.* ¶¶ 80-81.)

To be sure, courts consider two questions as to whether parties have agreed to arbitrate a dispute: (1) whether a valid agreement to arbitrate under the contract in question exists, and (2) whether the particular dispute in question falls within the scope of that arbitration agreement. *See Hartford Accident & Indem. Co.*, 246 F.3d at 226.

**1.    The Operating Agreement Contains a Valid Agreement to Mediate and Arbitrate This Dispute**

Plaintiff does not dispute the validity of the Agreements.  Indeed, the Amended Complaint is premised on the validity of the Agreements.  (ECF No. 27 ¶¶ 9-13 & Ex.'s A-C.)  Crabill has taken the position in ALGO's lawsuit against him in the New York Supreme Court that the Agreements are invalid because he was fraudulently induced. [11]  Nevertheless, "a broad arbitration

---

[10] The words "may arbitrate" does not mean that arbitration is permissive.  New York courts have held that the words "may arbitrate" gives the parties an option to either submit their claims to arbitration or abandon them altogether. *Triangle Equities Inc., v. Listokin*, 13 A.D.3d 269, 269-70 (N.Y. App. Div. 2004).  Interpreting the word "may" as giving the parties a choice between arbitration and litigation "would be to treat the arbitration agreement as a 'useless gesture.'"  *Id.* at 270 (quoting *Local 771 v. RKO Gen., Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977)).  Similarly, in *Ecological Labs., Inc. v. BluePlanet, LLC*, No. 601737/15, 2015 N.Y. Misc. LEXIS 5301, at *6 (N.Y. Sup. Ct. June 17, 2015), the Court held that disputes arising from the parties' agreement to arbitrate—which used the word "may" instead of "shall"—was compulsory.  "[T]he mere fact that the alternate dispute resolution provision states that the contractor 'may' initiate a dispute . . . does not afford the plaintiff the option to resort to [another] action . . . [T]he use of the term 'may' in the alternate dispute resolute resolution should be interpreted to limit the plaintiff to a choice between arbitration and abandonment of its claim."  *Id.* (citation omitted).

[11] *See* Defendants' Memorandum of Law In Opposition to Plaintiff's Motion for a Preliminary Injunction, *Boss Worldwide LLC v. Beau Crabill*, No. 033290/2019 (N.Y. Sup. Ct. Rockland Cnty. 2019), Dkt. No. 13.  Crabill has also taken the position in the State Court litigation that ALGO's claims should be arbitrated.

provision is separable from the substantive provisions of a contract such that the agreement to arbitrate is valid even if the substantive provisions of the contract were induced by fraud." *Markowits v. Friedman*, 144 A.D.3d 993, 997 (N.Y. App. Div. 2016); *see also Zafar v. Fast Track Leasing, LLC*, 162 A.D.3d 1100, 1102 (N.Y. App. Div. 2018) ("Under both federal and New York law . . . a broadly worded arbitration provision will be deemed separate from the substantive contractual provisions, and the agreement to arbitrate may be valid despite the underlying allegation of fraud."); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967) (a federal court may only consider fraud relating to the making and performance of the agreement to arbitrate; not fraud in the inducement generally).

Even though the Licensing and Sale Agreement do not contain arbitration clauses, instruments "executed at substantially the same time, [and] related to the same subject-matter . . . must be read together as one." *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197 (1941); *see also Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 233 (2d Cir. 1991) ("[I]nstruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together."). The Agreements were executed at the same time, by the same parties, and in the course of the same transaction. Accordingly, read together, each of these Agreements, contain an agreement to mediate and arbitrate—the validity of which is not contested.

## 2.    Plaintiff's Claim Falls Within the Scope of the Arbitration Provision

When the existence of an arbitration agreement is undisputed, such as here, "doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital RE Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002); *Moses*, 460 U.S. at 24-25 (the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").  It is

well settled under the FAA that arbitration clauses are construed "as broadly as possible."  *See S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc*., 745 F.2d 190, 194 (2d Cir. 1984).

Section VII(4) of the Operating Agreement contains broad and expansive language.  It requires mediation and arbitration of "*any dispute* over the provisions of" the agreement, as well as "in *other disputes* among the members."  (ECF No. 27-1 § VII(4) (emphasis added).)  A "presumption of arbitrability" arises from contracts containing broad arbitration clauses.  *ACE Capital*, 307 F.3d at 34; *JLM*, 387 F.3d at 172 (a broad arbitration clause is "presumptively applicable to disputes involving matters going beyond the interpret[ation] or enforce[ment of] particular provisions of the contract which contains the arbitration clause" (citations omitted).

Plaintiff asserts in the Amended Complaint that Crabill violated the non-compete provision of the Operating Agreement (ECF No. 27 ¶ 48), that it owns the "business and assets" of Crabill's company, All Out Raw, under the Sale Agreement (*id*. ¶ 11), and that it has a perpetual license to Crabill's name and image pursuant to the Licensing Agreement. (*Id*. ¶ 12).  Those allegations form the basis of ALGO's claim that it created and paid for the video at issue in this action, that it is the copyright owner of the video, and that Crabill's DMCA takedown notice was purportedly part of a "campaign of tortious interference designed to eliminate ALGO as a competitor."  (*Id*. at introduction p.1 and ¶ 73.)  Where, as here, an arbitration agreement specifies the very claims a party asserts in an action, "there can be no issue that the claims asserted are within the scope of the arbitration agreement."  *Moorning-Brown v. Bear, Stearns & Co.*, No. 99 Civ. 4130, 1999 U.S. Dist. LEXIS 18051, at *11 (S.D.N.Y. Nov. 23, 1999).

**B.    Plaintiff's DMCA Claim Is Arbitrable**

It is well settled that copyright and DMCA claims in connection with licensing disputes are "encompassed" by broad arbitration clauses like the one found in the Operating Agreement. *See Spinelli v. NFL*, 96 F. Supp. 3d 81, 102 (S.D.N.Y. 2015) (dismissing copyright claims because

they were within the scope of agreements which contained an arbitration clause); *Packeteer, Inc. v. Valencia Sys., Inc.*, No. C-06-07342, 2007 U.S. Dist. LEXIS 21348, at *9-10 (N.D. Cal. Mar. 6, 2007) (dismissing copyright and DMCA claims where arbitration provision covered "any dispute" arising from the contract and citing *McMahan Sec. Co. v. Forum Capital Mkts.*, 35 F.3d 82, 89 (2d Cir. 1994), for rejection of argument that copyright claims were unsuitable for arbitration).

ALGO does not argue that its DMCA claim is not encompassed by the broad mediation and arbitration provision in the Operating Agreement.   Rather, ALGO argues that since Crabill issued a takedown notice under the DMCA, it "has the right to invoke the same statutory process to protect itself."  (ECF No. 27 ¶ 81.)  But this argument ignores that ALGO already invoked the statutory protections set forth in the DMCA.  (*Id.* at ¶ 74 (admitting ALGO "submitted a counter-notification" after receiving Crabill's notice of the DMCA takedown)).  Upon receipt of ALGO's counter-notification, Google was required to restore the video at issue within 10-14 days. 17 U.S.C. § 512(g)(2)(C).   Therefore, ALGO's claim is not about restoration of the video, but about collecting money damages for Crabill's alleged misrepresentation.  (*See* ECF No. 27 at p. 24, (requesting an "Order that Defendant pay damages, costs, and attorneys' fees")).   ALGO can "effectively vindicate" these statutory rights in arbitration.  *Spinelli*, 96 F. Supp. 3d at 102 (citation omitted).   Because ALGO brought this action before mediating and arbitrating its claim, the Amended Complaint should be dismissed.  *Cole,* 2011 U.S. Dist. LEXIS 110603, at *16 (dismissing copyright infringement claims "so that arbitration may proceed").

## III.   The Complaint Should Be Dismissed for Lack of Personal Jurisdiction

### A.   Legal Standard Under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, "plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  When evaluating a motion to dismiss pursuant to Rule

12(b)(2), the court may "consider[] materials outside the pleadings . . . without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

"[T]he court must look first to the long-arm statute of the forum state." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation and quotations omitted). Under New York's long-arm statute, C.P.L.R. § 302(a), a court may exercise personal jurisdiction over a non-domiciliary who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) commits a tortious act within the state; or (3) "commits a tortious act without the state causing injury to person or property within the state . . . ."

## B.     This Court Lacks Jurisdiction Under New York's Long-Arm Statute

Plaintiff asserts in its Amended Complaint that Crabill is a resident of the State of Washington and a member of a Delaware limited liability corporation.  (ECF No. 27 ¶¶ 1–2.) Accordingly, the Amended Complaint—unlike the Complaint—invokes the New York long-arm statute, C.P.L.R. § 302.  "In applying the long-arm statute, 'New York courts have cautioned . . . that "defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities.'" *V Cars, LLC v. Isr. Corp.*, 902 F. Supp. 2d 349, 361 (S.D.N.Y. 2012) (quoting *Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012)).  "Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact." *Id.* (quoting *Aquiline*, 861 F. Supp. 2d at 386).  This is not one of those rare cases.

### 1.     Personal Jurisdiction Over Crabill Fails Under the First Prong of New York's Long-Arm Statute

To establish personal jurisdiction over Crabill under Section 302(a)(1), two requirements must be met: "(1) The defendant must have transacted business within the state; and (2) the claim

asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  "A non-domiciliary 'transacts business' under [Section] 302(a)(1) when he *purposefully avails* [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).  "Not all purposeful activity, however, constitutes a 'transaction of business' within the meaning of Section 302(a)(1)."  *Aquiline*, 861 F. Supp. 2d at 386.  "Rather, contacts with New York have been found to sustain personal jurisdiction only where a defendant's direct and personal involvement . . . on his own initiative . . . project[ed] himself' into New York to engage in a 'sustained and substantial transaction of business."  *Id*. (citations omitted).

Plaintiff does not allege that Crabill has purposefully availed himself of the privilege of conducting activities in New York by maintaining offices, registering to do business, or owning property in New York.  According to Plaintiff, Crabill purportedly projected himself into New York by conducting business in New York through holding himself out to customers as a New York-based entity and servicing New York customers.  (ECF No. 27 ¶ 5.)  Plaintiff also alleges that Crabill directed tortious activity in New York.  (*Id*.)  Those allegations do not establish that Crabill projected himself into New York "to engage in a sustained and substantial transaction of business."  *Aquiline*, 861 F. Supp. 2d at 386.

### a.    Crabill Did Not Hold Himself Out as a New York-Based Entity

To its allegation that Crabill "held himself out" as a member of a New-York based entity, Plaintiff alleges that Crabill sent advertising and marketing emails to thousands of customers and potential customers with a New York address.  (ECF No. 27 ¶ 5, Ex. D.)  "[T]he listing of a New York office and telephone number on a website, without more, is insufficient to confer personal jurisdiction."  *Minella v. Restifo*, 124 A.D.3d 486, 486 (N.Y. App. Div. 2015).  Even when the

address refers to an associated New York entity, that association alone does not confer jurisdiction. *Id*.  Emails are analogous to websites.  Under New York law, passive websites, "which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction."  *Paterno v. Laser Spine Inst*., 24 N.Y.3d 370, 377 (2014).  The Second Circuit uses a sliding scale for determining whether Internet activity is active or passive.  At one end of the spectrum, "a defendant clearly does business over the Internet," which includes entering contracts and transmitting computer files.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  "At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."  *Id*.  The emails in Exhibit D merely disseminate information and a link to YouTube videos.  That passive activity does not confer jurisdiction.

ALGO also points to Crabill's use of social media to interact with New York customers. (ECF No. 27 ¶¶ 21, 25-26.)  But "[p]romoting events through a website or other social media platform (e.g., Facebook) . . . [is] insufficient to confer jurisdiction."  *RLP Ventures LLC v. All Hands Instruction NFP*, No. 18 Civ 3988, 2019 WL 1316030, at *4 (S.D.N.Y. Mar. 22, 2019). Facebook and Instagram, as Crabill uses them, are more akin to a national advertisement, which is a "passive" activity.  *DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *6 (S.D.N.Y. Feb. 5, 2014).  The interactive aspects, such as determining where to hold a new seminar, do not constitute commercial activity because no business was transacted.  Thus, Crabill's use of social media for its inherent features of interactive messaging does not confer jurisdiction. *See id.*

Finally, ALGO points to a customer list (ECF No. 27 ¶ 18) and instances in which *ALGO*

held Crabill out as a New York entity (*id*. ¶¶ 16, 32, Ex. E).  Since "electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction," the mere existence of a customer list should likewise not be sufficient.  *Deutsche Bank Sec., Inc. v. Mont. Bd. of Investments*, 21 A.D.3d 90, 94 (N.Y. App. Div. 2005).  Moreover, a mailing list is a passive activity that does little more than make information available.  *See Best Van Lines*, 490 F.3d at 252.  As ALGO admits, the contracts in Exhibit E of the Amended Complaint were not between the customer and Crabill.  (ECF No. 27 ¶ 16.)  Similarly, the press release that ALGO refers to in Paragraph 32 was drafted by ALGO—not Crabill—and sent by ALGO.  None of those alleged activities show that Crabill transacts business in New York.

### b.     Crabill Does Not Service Customers in New York

First, Crabill has never conducted a seminar in New York.  (Decl. ¶ 15.)  Asymergy was solely responsible for Plaintiff's seminar business.  (*Id*.; ECF No. 27-1 § IV(7)(B).)  Moreover, Crabill did not personally attend the New York seminar.  (Decl. ¶ 15.)  He video-conferenced in from Australia because ALGO did not have enough content.  (*Id.*)  As discussed, disseminating information is passive activity.  *See Best Van Lines*, 490 F.3d at 252.

Second, Crabill's "live broadcasts"/webinars did not purposefully seek the protection of New York's laws by conducting activities within the State.  All Out Raw teaches its students and customers how to sell products online.  (ECF No. 1 ¶ 9; Decl. ¶¶ 3-5.)  Since Crabill started his webinar business in August 2017, he has conducted over 150 webinars.  (Decl. ¶ 5.)  For the first 6 months or so of the business, he did them exclusively in the State of Washington.  (*Id*.)  In the past 18 months, Crabill has done them wherever his travels take him, including Nevada, California, Utah, Vermont, Florida, Texas, Tennessee, Puerto Rico, Europe, Australia, and Indonesia.  (*Id*.)  Of those hundreds of webinars, approximately 70% were in Washington, 10% in Nevada, and 10% in California.  (*Id*.)  Plaintiff has identified only two webinars produced in New York.  (*Id*.)  Two

out of 150 webinars is insufficient to establish the requisite contacts with New York.  *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp*., 98 F.3d 25, 30 (2d Cir. 1996).

Third, the meetings identified in the Amended Complaint, such as Crabill's brief meeting with Asymergy in May 2018, his meetings with Asymergy on a stopover to see friends in New York, and lunch with Asymergy during another trip (*id.* at ¶¶ 10–12), were "minor" and "unproductive."  *PaineWebber Inc. v. WHV, Inc.*, No. 95 Civ. 0052, 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) ("occasional meetings in the forum state that are exploratory, unproductive or insubstantial are insufficient to establish requisite contacts with the state").  None of those meetings involved contract negotiations or the signing of any contracts, nor did they expand the business between the parties or with third parties.  In *PaineWebber*, the Court found that the defendant's representative came to New York "only for three minor meetings" during the three-year duration of the agreement at issue.  *Id.*  Because those "meetings did not involve contract negotiations, no contracts were signed, and [one of the meetings] was unproductive since it did not, as planned, result in the expansion of PaineWebber's efforts to sell to [defendant]," the Court granted the defendant's 12(b)(2) motion.  *Id*. at *3, *5.  The same result should occur here.

But even if Crabill's infrequent and insubstantial visits were enough to "transact business" within the State of New York, Plaintiff cannot show that its claim arises from that business activity.  A claim "aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted."  *Sole Resort*, 450 F.3d at 103 (citations omitted).  Here, Plaintiff claims that Crabill has "initiat[ed] a campaign of tortious and unfair activities designed to eliminate ALGO as a competitor," including "the issuance of fraudulent DMCA takedown notices, which is the subject of this action."  (ECF No 27. at p. 1.)

24

The tort alleged—misrepresentation under 17 U.S.C. § 512(f)—does not arise from Crabill's brief attendance by video conference at the seminar, or the creation of Crabill's webinars in New York, or Crabill's meetings with Asymergy in New York.[12]  Rather, it arises out of the Crabill's communications (in Washington) with YouTube (headquartered in California), over a video that Potkonjak (a Washington resident) created in California.   (Decl. ¶¶ 14, 18.) Accordingly, Section 302(a)(1) does not confer jurisdiction over Crabill.  *See Mantello v. Hall*, 947 F. Supp. 92, 100-02 (S.D.N.Y 1996) (dismissing copyright infringement action because that tort did not arise out of defendants' transaction of business in New York).

### 2.    Personal Jurisdiction Over Crabill Fails Under the Second and Third Prongs of New York's Long-Arm Statue

The second and third prongs of New York's long-arm statue concerning tortious acts do not confer personal jurisdiction over Crabill because, as discussed *supra* Section I, Plaintiff fails to state a tort claim in the Amended Complaint.  The Court should therefore dismiss the Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

---

[12] *Barricade Books, Inc. v. Langberg*, No. 95 Civ. 8906, 2000 WL 1863764, at *3 (S.D.N.Y. Dec. 19, 2000) (explaining that while the New York Court of Appeals has held that section 302(a)(1) is not limited to actions in contract, sections 302(a)(2) and 302(a)(3) "are considered the more appropriate provisions for tort actions").

Dated:   July 5, 2019                          Respectfully submitted,

                                               FISH & RICHARDSON P.C.

                                               By: */s/Kristen McCallion*
                                                   Kristen McCallion (KM5593)
                                                   mccallion@fr.com
                                                   Vivian Cheng  (VC6321)
                                                   cheng@fr.com
                                                   601 Lexington Avenue, 52nd Floor
                                                   New York, NY  10022
                                                   Tel: 212 765-5070
                                                   Fax: 212-258-2291

                                                   Jeremy D. Anderson (*pro hac vice*)
                                                   222 Delaware Avenue, 17th Floor
                                                   Wilmington, DE 19801
                                                   janderson@fr.com
                                                   Tel: 302 778-8452

                                                   *Attorneys for Defendant Beau Crabill*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2019, I electronically filed the foregoing document with the

Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys

of record.

> Peter A. Sullivan
> FOLEY HOAG LLP
> 1301 Avenue of the Americas, 25th Floor
> New York, NY 10019
> psullivan@foleyhoag.com
>
> David A. Kluft
> FOLEY HOAG LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> dkluft@foleyhoag.com

Dated:  July 5, 2019                               */s/Kathryn Lugo*
                                                    Kathryn Lugo