UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOSS WORLDWIDE LLC d/b/a ALGO ONLINE RETAIL,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BEAU CRABILL,<br><br>　　　　　Defendant. | Civil Action No. 7:19-cv-02363-VB |

## PLAINTIFF'S OPPOSITION TO

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

**Table of Contents**

1.   **Introduction**.......................................................................................................... 1

2.   **The Allegations of the FAC are Sufficient to State a Claim** ......................................... 2

    A.   Allegations Relevant to the Section 512(f) Claim ....................................................2

    B.   The FAC Alleges a Knowing Misrepresentation, which is an Issue of Fact ..........5

    C.   Crabill's Claim to Have Used the DMCA Copyright Process to Vindicate a
        Non-Copyright Interest is Further Evidence of Bad Faith......................................8

    D.   Plaintiff is Not Required to Allege Copyright Ownership, and In Any Event
        Its Allegations of Copyright Ownership are Sufficient .........................................10

    E.   Crabill's Introduction of Additional Facts About His Own Use of The Video
        on YouTube, If Considered, Further Demonstrate Bad Faith................................13

3.   **This Court has Subject Matter Jurisdiction**................................................................ 15

4.   **This Court has Personal Jurisdiction**.......................................................................... 19

    A.   Facts Demonstrating Personal Jurisdiction Over Crabill in New York.................19

    B.   This Court has Personal Jurisdiction Over Crabill ...............................................21

5.   **Conclusion** ...................................................................................................................... 25

ii

## Table of Authorities

**Cases**

*A.H.A. Gen. Constr. v. New York City Hous. Auth.*,
   92 N.Y.2d 20 (1998) ............................................................................................................ 18

*Advanced Bodycare Solutions, LLC v. Thione Int'l Inc.*,
   524 F.3d 1235 (11th Cir. 2008) ..................................................................................... 16, 17

*AMF, Inc. v. Brunswick Corp.*,
   621 F.Supp. 456 (E.D.N.Y. 1985) ...................................................................................... 16

*Ashcroft v. Iqbal*,
   566 U.S. 662 (2009) ............................................................................................................... 6

*Aymes v. Bonelli*,
   980 F. 2d 857 (2d Cir. 1992) .......................................................................................... 11, 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   171 F.3d 779 (2d Cir. 1999) ................................................................................................ 21

*Beacon Enters., Inc., v. Menzies*,
   715 F.2d 757 (2d Cir. 1983) ................................................................................................ 23

*Best Van Lines, Inc., v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ................................................................................................ 22

*Bright-Asante v. Saks & Co.*,
   242 F. Supp. 3d 229 (N.Y.S.D. 2017) ................................................................................. 16

*Cabell v. Zimmerman*,
   No. 09-cv-10134-CM, 2010 U.S. Dist. LEXIS 25486 (S.D.N.Y. March 12, 2010) .............. 6, 7

*Cargo Partner AG v. Albatrans, Inc.*,
   352 F.3d 41 (2d Cir. 2003) .................................................................................................... 7

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ............................................................................................................. 11

*Crossfit, Inc. v. Alvies*,
   No. 13-cv-3371-SC, 2014 U.S. Dist. LEXIS 7930 (N.D. Cal.  Jan. 22, 2014) ........................... 9

*CutCo Industries, Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) ................................................................................................ 21

iii

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)............................................................................................................ 24

*Doe v. Arnett*,
   No. 12-cv-0096-JST, 2012 U.S. Dist. LEXIS 107791 (C.D. Cal. Aug. 1, 2012)...................... 7

*Drescher v. Shatkin*,
   280 F.3d 201 (2d Cir. 2002).................................................................................................... 11

*Eisenberg v. Advance Relocation & Storage, Inc.*,
   237 F.3d 111 (2d Cir. 2000)............................................................................................. 11, 12

*Gale v. Smith & Nephew PLC*,
   No. 12-cv-3614-VB, 2015 U.S. Dist. LEXIS 10885 (S.D.N.Y. Jan. 20, 2015) ....................... 22

*George Reiner & Co. v. Schwartz*,
   41 N.Y.2d 648 (N.Y. 1977) .................................................................................................... 21

*Ginsberg v. Gov't Props. Tr., Inc.*,
   No. 07-cv-00365, 2007 U.S. Dist. LEXIS 75771 (S.D.N.Y. Oct. 10, 2007)............... 21, 22, 25

*Hd Brous & Co. v. Synthesys Secure Techs.*,
   229 F.Supp.2d 191 (E.D.N.Y. 2002) ........................................................................... 21, 23, 24

*Heston v. GB Capital Holdings, LLC*,
   No. 16-cv-912-WQH-RBB, 2016 U.S. Dist. LEXIS 113355 (S.D. Cal. Aug. 23, 2016)......... 16

*Hoffritz v. Cutlery, Inc., v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985)...................................................................................................... 23

*Holick v. Cellular Sales of N.Y., LLC*,
   559 Fed. Appx. 40 (2d Cir. 2014)........................................................................................... 18

*Horror Inc. v. Miller*,
   335 F.Supp.3d 273 (D. Conn. 2018)....................................................................................... 11

*Hosseinzadeh v. Klein*,
   276 F.Supp.3d 34 (S.D.N.Y. 2017)........................................................................................... 6

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................................ 24

*ISE Entm't Corp. v. Longarzo*,
   No. 17-cv-9132-MWF, 2018 U.S. Dist. LEXIS 40755 (C.D. Cal. Feb. 2, 2018) ..................... 8

iv

*Kirke La Shelle Co. v. Paul Armstrong Co.*,
  263 N.Y. 79 (1933) ............................................................................................................... 18

*Langman Fabrics v. Graff Californiawear, Inc.*,
  160 F.3d 106 (2d Cir. 1998)................................................................................................. 12

*Lavandeira v. Infuse, LLC*,
  No. 08-cv-11213-JSR-DF, 2009 U.S. Dist. LEXIS 141570 (S.D.N.Y. Nov. 24, 2009) ............ 7

*Lenz v. Universal Music Corp.*,
  572 F.Supp.2d 1150 (N.D. Cal. 2008)............................................................................. 7, 10

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016) ...................................................................................... 5, 6, 10

*Mark v. Neundorf*,
  147 Conn. App. 485 (Conn. App. Ct. 2014)........................................................................... 17

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*,
  No. 14-cv-6016-ER, 2019 U.S. Dist. LEXIS 1144 (S.D.N.Y. Jan. 3, 2019)............................ 16

*McDonnell Douglas Finance Corp. v. Penn. Power & Light Co.*,
  858 F.2d 825 (2d Cir. 1988).................................................................................................. 17

*Milligan v. CCC Info., Servs.*,
  920 F.3d 146 (2d. Cir. 2019)................................................................................................. 16

*Nat'l Westminister Bank PLC v. Retirement Care Associates, Inc.*,
  No. 98-cv-6023-JSM, 1999 U.S. Dist. LEXIS 5807 (S.D.N.Y. Apr. 23, 1999)....................... 21

*O'Mahoney v. Susser*,
  531 F. App'x 39 (2d Cir. 2013) ....................................................................................... 21, 23

*Orchard Yarn & Thread Co. v. Schaub*,
  No. 17-cv-2477-JMF, 2018 U.S. Dist. LEXIS 94790 (S.D.N.Y.  June 5, 2018).................... 22

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997).......................................................................................... 21, 22

*Prof'l Org. of Women in Entm't Reaching Up v. Killola*,
  No. 14-cv-5606, 2014 U.S. Dist. LEXIS 195943 (C.D. Cal. Oct. 9, 2014)............................. 10

*Richards v. Direct Energy Servs., LLC*,
  915 F.3d 88 (2d Cir. 2019).................................................................................................... 6

*Rochester Cmty. Individual Practice Ass'n v. Finger Lakes Health Ins. Co.*,
281 A.D.2d 977 (N.Y. App. Div. 2001) .................................................................................. 17

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
48 F.Supp. 3d 675 (S.D.N.Y. 2014)................................................................................. 21, 22

*Smith v. Summit Entm't, LLC*,
No. 3:11-cv-348, 2011 U.S. Dist. LEXIS 60246 (N.D. Ohio June 6, 2011) ............................. 9

*SmithKline Beecham Consumer Healthcare, L.P. Watson Pharms.*,
211 F.3d 21 (2d Cir. 2000)....................................................................................................... 16

*Superior Site Work, Inc. v. Triton Structural Concrete, Inc.*,
No. 12-cv-4335, 2013 U.S. Dist. LEXIS 1043002 (E.D.N.Y. July 24, 2013).......................... 16

*TD Bank, N.A. v. Hill*,
No. 12-cv-7188, 2015 U.S. Dist. LEXIS 97409 (D. N.J. July 27, 2015) ................................... 8

*Tuteur v. Crosley-Corcoran*,
961 F.Supp.2d 333 (D. Mass. 2013) .......................................................................................... 9

*Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*,
No. 16-cv-5015, 2017 U.S. Dist. LEXIS 58204 (S.D.N.Y. April 17, 2017) .............................. 5

**Statutory Authorities**

17 U.S.C. § 512(c)........................................................................................................ 1, 3, 5, 9, 11

17 U.S.C. § 512(f) .................................................................................................... 1, 5, 6, 9, 10, 11

17 U.S.C. 101............................................................................................................................... 11

vi

## 1.    Introduction

Defendant Beau Crabill committed an act that is common in the internet age: in the midst of a commercial dispute with Plaintiff Boss Worldwide LLC d/b/a ALGO Online Retail ("ALGO"), he submitted a false Digital Millennium Copyright Act ("DMCA") notice to YouTube, asking that it take down a video ALGO was using to promote its business. The false notice worked: YouTube removed the video. It is precisely this type of abuse that DMCA Section 512(f) seeks to remedy, by establishing liability for any "knowing material misrepresentation" in a copyright takedown notice. 17 U.S.C. 512(f).

Crabill knew the video was created at ALGO's direction by a videographer hired by ALGO; that it was paid for by ALGO in order to promote ALGO; that it depicted an ALGO event and bore the ALGO logo. Nevertheless, Crabill falsely represented to YouTube that he – not ALGO – controlled the copyright and that he believed in good faith ALGO was "not authorized" to use it. 17 U.S.C 512(c)(3). Crabill later through counsel falsely asserted that he "created the video." Crabill now asserts that he was simply mistaken. But his unsupported recitations of good faith are contradicted by the robust allegations in the FAC, and they present factual issues that cannot be resolved pursuant to Fed. R. Civ. P. 12(b)(6).

Crabill further argues that this Court has neither subject matter jurisdiction over the matter nor personal jurisdiction over himself.  Because none of Crabill's arguments have merit, the motion should be denied.[1]

---

[1] In both his original "Affidavit" (Dkt. #20) and his revised "Declaration" (Dkt. #32), Crabill attempts to introduce factual allegations and testimony unrelated to personal jurisdiction. These new allegations raise factual issues that are inappropriate for the Court's consideration on a 12(b)(6) motion to dismiss. They are nevertheless addressed herein.

### 2. The Allegations of the FAC are Sufficient to State a Claim

Crabill first argues that that the FAC should be dismissed because Plaintiff has not made sufficient allegations of his knowing misrepresentations. On the contrary, the FAC's allegations regarding this heavily factual issue are more than sufficient.

#### A. Allegations Relevant to the Section 512(f) Claim

In April 2018, the parties entered into a series of agreements through which Defendant Beau Crabill became a minority owner of and spokesperson for ALGO, the business of which includes providing seminars about how to sell products online. FAC at ¶¶ 7-9, 13-15. In the summer of 2018, ALGO was in search of a videographer to create promotional videos. FAC at ¶52. Crabill recommended Riley Potkonjak. *Id*. ALGO hired Potkonjak and paid him approximately $3,000 in advance for "creating" and "editing" videos for ALGO. FAC at ¶¶ 53-55.

The first ALGO seminar in which Crabill participated was held November 3-4, 2018, at which event Crabill promoted ALGO products as a spokesperson for ALGO. FAC at ¶¶ 32-33, 56. During the event, Crabill wore an "ALGO" t-shirt and spoke in a conference center that was decorated with ALGO posters. FAC at ¶¶ 67-68. ALGO directed Potkonjak to film the event on equipment that ALGO purchased for that purpose. FAC at ¶¶ 53, 56-57, 61-62, 64. ALGO secured permission from the ALGO seminar attendees for Potkonjak to film them. FAC at ¶ 57.

After the event, Potkonjak edited the footage. FAC at ¶58. Crabill knew that Potkonjak was creating the video for ALGO, complained to ALGO about Potkonjak's work ethic during the editing process, and asked ALGO to stop paying him and find a new videographer. FAC at ¶59. Potkonjak provided a version of the video to ALGO on approximately November 9, 2018. FAC at ¶58. ALGO made some alterations to the video, including changing the music, and uploaded it

2

to YouTube in February 2019. FAC at ¶¶ 61-62.  The video begins with the "ALGO" logo, and depicts clips from the November ALGO seminar. FAC at ¶ 66. Crabill is briefly and indirectly depicted in the video: there is a shot of his back wearing an ALGO t-shirt, and shots with ALGO posters in the background that depict Crabill as the ALGO spokesman. FAC at ¶ 67-68.

Subsequent to the creation of the video, the parties' relationship deteriorated; efforts in December 2018 and early January 2019 to negotiate Crabill's amicable separation failed. FAC at ¶ 46-48. On or about January 13, 2019, Crabill decided to leave ALGO on his own unilateral terms: he changed the password to ALGO online accounts, causing ALGO to lose access to its own online properties and customer information, and rerouting online customer payments from ALGO to a bank account controlled by Crabill. FAC at ¶ 48. In the weeks that followed, Crabill began defaming ALGO to customers and business partners. FAC at ¶ 48. These activities are the subject of a separate lawsuit in state court.[2]

On March 3, 2019, in the midst of the above-described events, Crabill began submitting false DMCA copyright takedown requests that were designed to eliminate ALGO's online presence, including a copyright takedown notice to YouTube. FAC at ¶ 48, 78-79. In order to submit the YouTube takedown notice pursuant to the DMCA, Crabill had to represent that he "had a good faith belief that use of the material in the matter complained of is not authorized by the copyright owner, its agent, or the law." FAC at ¶¶ 69-70; 17 U.S.C. § 512(c)(3)(A)(v). Crabill also had to provide a signed statement, under penalty of perjury, that the "information in the notification is accurate" and that he was "authorized to act on behalf of the owner" of the

---

[2] *See Boss Worldwide LLC v. Beau Crabill et al.,* Supreme Court of the State of New York, County of Rockland, No. 032290/2019.

3

copyright. FAC at ¶ 70; 17 U.S.C. § 512(c)(3)(A)(vi). In response to the notice, YouTube removed the video from the platform and gave ALGO a "copyright strike" that could eventually lead to its entire account being disabled. FAC at ¶ 69.

     Crabill represented to YouTube that ALGO was not authorized to upload its own video. The FAC contains robust allegations demonstrating why Crabill knew this was not true. Indeed, neither the circumstances of the video's creation nor its content could have led any reasonable person to believe that Crabill was its owner, or that ALGO was not authorized to use it. The FAC alleges that "Crabill knew that ALGO hired and paid Potkonjak to create the video footage and the edited video," and that he knew the video "was created by Potkonjak for promotional use by ALGO." FAC at ¶ 62-64, 73. Crabill did not believe the video was being created for him personally; he knew it was being created for ALGO's corporate use, which is why he asked ALGO to find a new videographer when he was dissatisfied with Potkonjak's work, rather than finding a new videographer himself. FAC at ¶ 59, 62-64. Crabill's knowledge of the foregoing is further supported by the indisputable content of the video, which Crabill knew depicted an ALGO event, not an event run solely by Crabill;[3] which was clearly labeled in the credits as an ALGO video; and in which Crabill only appeared in association with an ALGO logo (on the back of a t-shirt and in ALGO posters in the background). FAC at ¶¶ 66-68. For the same reasons, Crabill also knowingly misrepresented in the takedown notice that he was the copyright owner or the authorized agent thereof (he was not) and knowingly misrepresented that the information in the takedown notice was accurate (it was not). FAC at ¶¶ 64-65, 70-73.

---

[3] In his Declaration, Crabill admits that he understood the difference between ALGO events and events he conducted without ALGO, and acknowledges that the video created by Potkonjak was about the former. Dkt. #32 at ¶¶ 5, 13-14

4

In an effort to avoid litigation, Plaintiff's counsel initially contacted Crabill's counsel and demanded that Crabill withdraw the false takedown notice. FAC at ¶ 76 & Ex. F. Crabill, through counsel, refused and falsely claimed to have "created the video." FAC at ¶¶ 76-77. Crabill also claimed that his DMCA copyright takedown was justified by non-copyright rights pertaining to the depiction of his appearance. FAC at ¶ 76.

    B.    The FAC Alleges a Knowing Misrepresentation, which is an Issue of Fact

The party submitting a DMCA takedown notice must make a series of representations under penalty of perjury, including the representations that the submitting party is the copyright owner or authorized agent of the owner; that the submitting party "[h]as a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;" and that the information contained in the notice is accurate. 17 U.S.C. 512(c)(3)(A); *see also Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC,* No. 16-cv-5015, 2017 U.S. Dist. LEXIS 58204 at \*16 (S.D.N.Y. April 17, 2017). Where the submitting party abuses the DMCA process by submitting false information in a takedown notice, it is subject to liability under 17 U.S.C. 512(f), which applies to "any person who knowingly materially misrepresents that material or activity is infringing." 17 U.S.C. 512(f). The party submitting a false takedown request is thus subject to liability "if it knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized" by the copyright owner or by the law. *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1154 (9th Cir. 2016).

Whether the party submitting a DMCA takedown notice acted in good faith or made a "knowing misrepresentation" is an issue of fact that requires the presentation of evidence, and therefore not normally susceptible to determination on a motion to dismiss, because "a jury must

5

determine whether [defendant's] actions were sufficient to form a subjective good faith belief." *Lenz v. Universal Music Corp.,* 815 F.3d at 1154 & fn. 3 (whether defendant made a "knowing misrepresentation," based on "evidence" offered at summary judgment, presented an issue of material fact for the jury); *see also, Hosseinzadeh v. Klein,* 276 F.Supp.3d 34, 47 (S.D.N.Y. 2017) (same); *c.f. Richards v. Direct Energy Servs., LLC,* 915 F.3d 88, 112 (2d Cir. 2019) ("Whether a party has acted in good faith or not is a question of fact for the jury").

Crabill, relying on *Cabell v. Zimmerman,* No. 09-cv-10134-CM, 2010 U.S. Dist. LEXIS 25486 (S.D.N.Y. March 12, 2010), argues that this Court should grant dismissal simply based on his counsel's proclamation of his good faith. *Cabell* does not support that argument. In *Cabell,* a *pro se* plaintiff brought a copyright infringement claim – not a DMCA Section 512(f) claim – against a defendant that had mistakenly submitted an inaccurate DMCA takedown notice. *Id.* at *3-4. The defendant admitted the mistake immediately, but the *pro se* plaintiff sued anyway, alleging that the error had been "negligent." *Id.* at *1-2, 10-11.  In *dicta,* the Court opined that, even if the claim had been styled as a Section 512(f) misrepresentation count, it would have been subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6), because it alleged "negligence" instead of the statutorily required "knowing misrepresentation." *Id.* at *9-11 (citing, 17 U.S.C. 512(f)). That case is not remotely similar to the present matter, where Plaintiff has alleged Crabill's knowing misrepresentations, and the specific bases for his knowledge.

The *Cabell* court nevertheless did cite the correct legal standard for determining whether a Section 512(f) claim should survive a 12(b)(6) motion to dismiss. The court properly noted that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but merely "sufficient factual matter … to state a claim to relief that is plausible on its face." *Id.* at *4-5 (citing *Ashcroft v. Iqbal,* 566 U.S. 662, 1949 (2009)). The Court also noted

6

that it must "liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* at \*5 (citing *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003)). Courts applying the foregoing standard to Section 512(f) claims have routinely held that allegations far less detailed and complete than those in the present case are sufficient to survive a 12(b)(6) motion to dismiss. *E.g., Lavandeira v. Infuse, LLC*, No. 08-cv-11213-JSR-DF, 2009 U.S. Dist. LEXIS 141570 at \*25-26 (S.D.N.Y. Nov. 24, 2009) (allegations that defendant in bad faith issued false takedown notice in order to harm plaintiff are sufficient to meet the pleading requirement for Section 512(f)); *Doe v. Arnett,* No. 12-cv-0096-JST, 2012 U.S. Dist. LEXIS 107791 at \*8-9 (C.D. Cal. Aug. 1, 2012) (allegations that defendant had not formed a good faith belief of his own ownership of the copyrighted work at the time he issued the takedown notice "sufficient at this stage of the proceedings to establish a case or controversy under the DMCA"); *Lenz v. Universal Music Corp.,* 572 F.Supp.2d 1150, 1151-1156 (N.D. Cal. 2008) (allegation that defendant issued takedown for ulterior motive, rather than based on good faith belief of a lack of authorization, "is sufficient to state a misrepresentation claim pursuant to Section 512(f)").

Here, as detailed above, the allegations are more than sufficient to meet this standard. Plaintiff has alleged detailed facts regarding Crabill's knowledge of the creation, purpose and content of the video. FAC at ¶¶ 32-33, 52-68. Plaintiff has alleged that Crabill, based on this knowledge, understood that Plaintiff was authorized to use the video, but he nevertheless knowingly and falsely stated in the DMCA notice that he believed Plaintiff was not authorized to use it and therefore had infringed the copyright, and further falsely stated that he (Crabill) was the owner or authorized agent of the owner. FAC at ¶¶ 69-73. Plaintiff has also alleged that

7

Crabill had specific ulterior motives for making these misrepresentations, including the parties' ongoing business dispute. FAC at ¶¶ 46-51.

Crabill's knowledge and bad faith are further demonstrated by his actions subsequent to the false takedown notice. When initially confronted with the misrepresentations, he did not admit it was a mistake, but falsely claimed to have "created the video." FAC at ¶¶ 76-77. Crabill could have attempted to demonstrate that his DMCA notice was a good faith mistake by withdrawing it when asked by Plaintiff, which may have avoided the necessity of this litigation, but instead he refuses to correct his "mistake" to this day, showing that it was not in fact a mistake at all. *FAC at ¶ 76*; *ISE Entm't Corp. v. Longarzo,* No. 17-cv-9132-MWF, 2018 U.S. Dist. LEXIS 40755 (C.D. Cal. Feb. 2, 2018) (defendant's refusal to withdraw false DMCA takedown notice after being asked to do so by plaintiff supports allegations of bad faith).[4] These allegations of bad faith are more than sufficient to state a claim.

## C.     Crabill's Claim to Have Used the DMCA Copyright Process to Vindicate a Non-Copyright Interest is Further Evidence of Bad Faith

After the takedown notice was issued, Crabill through counsel offered the additional justification that the video violated a non-copyright interest, specifically Crabill's right of publicity, because his "head and face appear in it." FAC at ¶¶ 76-77. In his motion to dismiss, Crabill claims that his takedown notice was issued in good faith because his head and face actually do appear in the video, albeit briefly and indirectly.

---

[4] Additionally, although at the time of the takedown notice Crabill had retained counsel, he did not consult with that counsel about the DMCA takedown request; counsel admitted that it had not even seen the video. FAC at ¶ 76 & Ex. F. This admission is further evidence of bad faith. *C.f., TD Bank, N.A. v. Hill,* 2015 U.S. Dist. LEXIS 97409 at *60 (D. N.J. July 27, 2015) ("full review by copyright counsel" prior to take down notice is evidence of good faith for Section 512(f) purposes).

Crabill's post-hoc non-copyright excuse for his false DMCA takedown notice does not negate Plaintiff's allegations of bad faith; it further supports them. The issue in this case is whether Crabill made a knowing misrepresentation to YouTube regarding copyright, not whether he felt his misrepresentations were justified by a non-copyright interest. 17 U.S.C. 512(c) & (f). Crabill did not tell YouTube he wanted the video taken down because he appeared in it; he falsely told YouTube that Plaintiff had committed copyright infringement. He also stated under penalty of perjury that he had formed a good faith belief that Plaintiff's use of the video was not authorized by copyright law, and specifically invoked the copyright procedures of the DMCA in order to vindicate the rights he falsely claimed to own or control.

Use of the DMCA copyright procedure to protect a non-copyright interest is itself a knowing misrepresentation under Section 512(f). For example, in *Crossfit, Inc. v. Alvies*, No. 13-cv-3371-SC, 2014 U.S. Dist. LEXIS 7930 at * (N.D. Cal.  Jan. 22, 2014), the Court held that the knowing use of the DMCA copyright takedown process to attempt to protect trademark rights created liability under Section 512(f).  Similarly, in *Smith v. Summit Entm't, LLC*, No. 3:11-cv-348, 2011 U.S. Dist. LEXIS 60246 at *7 (N.D. Ohio June 6, 2011), the defendant's counsel had asserted in correspondence that his client's trademark rights had justified an inaccurate copyright takedown notice. The Ohio Court refused to dismiss the Section 512(f) claim, holding that "[w]hile defendant *post hoc* and promptly acknowledged that it has no copyright interest in plaintiff's song, that does not matter. Plaintiff alleges that defendant made an unquestionably false assertion in take down notices and the song was taken down." *Id.* And in *Tuteur v. Crosley-Corcoran,* 961 F.Supp.2d 333, 336 & 344 (D. Mass. 2013), alleged correspondence between the parties' attorneys after the takedown notice was issued demonstrated that the defendant had

9

issued its notice in order to protect a reputational interest, not a copyright interest, which the Court held presented an allegation of bad faith sufficient to survive a motion to dismiss.

As in the foregoing cases, here Crabill told YouTube that Plaintiff had infringed Crabill's copyright – even though he now claims he was trying to protect a non-copyright interest. This is a knowing misrepresentation under the statute.  Further demonstrating Crabill's bad faith is the fact that the non-copyright interest he claims is also illegitimate. Crabill licensed his right of publicity (including the use of his name and likeness) to ALGO beginning in April 2018, and this license was still in effect when the video was created and when Crabill issued the false takedown notice. FAC at ¶12, 49. Therefore, even if a non-copyright interest could justify a DMCA copyright takedown notice – which as demonstrated above, it cannot not – the FAC sufficiently alleges that Crabill knew that he in fact had no non-copyright interest to protect.

     D.    <u>Plaintiff is Not Required to Allege Copyright Ownership, and In Any Event Its Allegations of Copyright Ownership are Sufficient</u>

Crabill also argues that the FAC should be dismissed because Plaintiff has not alleged it is the owner of the copyright in the video. This argument misconstrues the law and misstates the allegations of the FAC.  Section 512(f) gives a cause of action to any "alleged infringer" who is falsely accused of infringement in a takedown notice. 17 U.S.C. § 512(f). Ownership of the copyright is not an element of the cause of action. *See e.g., Lenz v. Universal Music,* 815 F.3d 1145, 1149-1150 (9th Cir. 2016) (seminal Section 512(f) case between YouTube user and publishing administrator, neither of whom claimed to own the copyright). Thus, "[i]n arguing that one must be a 'copyright owner' to assert a 512(f) claim, [defendant has] misread the statute, which allows an 'alleged infringer' to sue for damages." *Prof'l Org. of Women in Entm't*

10

*Reaching Up v. Killola,* No. 14-cv-5606, 2014 U.S. Dist. LEXIS 195943 at *7-8 (C.D. Cal. Oct. 9, 2014) (citing *Lenz v. Universal Music Corp.,* 572 F.Supp.2d 1150, 1145-55 (N.D. Cal. 2008)).

To make out a Section 512(f) count, all that is required is that the defendant asserted that the plaintiff's use was not authorized, 17 U.S.C. § 512(c)(3)(A)(v), and that this assertion was knowingly false. 17 U.S.C. § 512(f). Here Crabill claimed that Plaintiff's use was not authorized, and this claim was knowingly false for two reasons: (1) because Crabill did not form a good faith belief Plaintiff was not the copyright owner; and (2) because even if Plaintiff is not the copyright owner, Crabill did not form a good faith belief that Plaintiff's use was unauthorized.

Plaintiff has alleged that it is the owner of the copyright in the video, because Potkonjak was an "employee" for copyright purposes, FAC at ¶62, and thus the video was a work made for hire pursuant to the definitions set forth in 17 U.S.C. § 101. Defendant, without citation to authority, makes the conclusory claim that Potkonjak was not an "employee" simply because he received a W-9. Opposition at p. 8. This is a dramatic misstatement of the law. The Second Circuit has repeatedly confirmed that the determination of whether someone is an "employee" for copyright purposes is to be made pursuant to the principles of common law agency set forth by the Supreme Court in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) (hereinafter "*CCNV*") and not based on other sources of law. *Aymes v. Bonelli,* 980 F. 2d 857, 860 (2d Cir. 1992) (adopting *CCNV* to determine in copyright case "the question of when an individual is an employee under the work for hire doctrine"); *see also Drescher v. Shatkin,* 280 F.3d 201, 204-205 (2d Cir. 2002); *see also Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 115-116 (2d Cir. 2000); *Horror Inc. v. Miller,* 335 F.Supp.3d 273, 296-297 (D. Conn. 2018) ("[l]abor law does not provide grounds for displacing the *CCNV*" analysis).

11

In *CCNV,* the Supreme Court held that "whether a party is an employee" for copyright purposes depends on a number of factors, including the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship; whether the hiring party had the right to assign additional work; the extent of the hired party's discretion over when and how long to work; the method of payment; whether the hired party hired assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; whether benefits are provided; and tax treatment. *CCNV* at 751. This multi-factor inquiry is by nature factual, and therefore the question of whether a hired party is an employee for purposes of the 1976 Copyright Act is a question of fact not normally resolved on a motion to dismiss. *Aymes v. Bonelli,* 980 F. 2d at 860-861 (*Reid* factors were issues of fact on which "factual findings" were required); *Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d at 115 ("District Court's determination as to "the presence or absence" of each *Reid* factor is a finding of fact"); *Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106 (2d Cir. 1998) (treating *Reid* factors as issues of fact for determination on summary judgment).

Here, Crabill has pointed to one factor only (tax treatment) to argue that Potkonjak was not an employee for copyright purposes, but no single factor is determinative. *See Aymes v. Bonelli,* 980 F.2d 857. The FAC contains allegations regarding numerous *CCNV* factors that weigh in favor of Potkonjak's "employee" status for copyright purposes, including the ALGO's provision of the equipment and other instrumentalities (FAC at ¶ 56-57); the location of the work being an ALGO event (FAC at ¶ 56); ALGO's ability to assign other work besides the video in dispute, as indicated by the invoices (FAC at ¶ 53); ALGO's discretion over the timing and length of the work (FAC at ¶ 56-59); the fact that the video was part of the regular business of ALGO (FAC at ¶ 52); and the fact that ALGO was indeed in business (FAC at ¶ 52). The Second

12

Circuit has also held that the "right to control the manner and means by which the product is accomplished" should be considered, *see Aymes v. Bonelli,* 980 F.2d at 860, and here the FAC alleges that ALGO had this right to control, a control Crabill acknowledged when he complained to ALGO management about Potkonjak's work. FAC at ¶¶ 52, 59-61. These factual assertions are sufficient to plausibly allege ownership of the copyright to the video as a work for hire.

In addition to its claim of authorization by way of copyright ownership, Plaintiff has also sufficiently alleged that, even if Potkonjak was not an "employee" for copyright purposes, Plaintiff's use of the video was nevertheless authorized by law and by the copyright owner, because Plaintiff's relationship with Potkonjak gave rise to a license. (FAC at ¶¶ 63-65). The Second Circuit has held that an implied license arises "where one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P. Watson Pharms.,* 211 F.3d 21, 25 (2d Cir. 2000). That is precisely what is alleged here, where Potkonjak was hired by ALGO to create promotional videos for ALGO, he created a promotional video about ALGO using ALGO's equipment, he delivered the video to ALGO, and ALGO paid him for this work. (FAC at ¶¶ 52-58).[5] ALGO was authorized by Potkonjak and by law to use the video, and Crabill knew it.

### E.    Crabill's Introduction of Additional Facts About His Own Use of The Video on YouTube, If Considered, Further Demonstrate Bad Faith

Plaintiff also attempts to prove his own good faith by introducing with his motion to dismiss new factual assertions, including his own uploading of the video, or a version thereof, on the "Beau Crabill" YouTube channel in November 2018. Dkt. #32 at ¶19.  Crabill encourages

---

[5] These allegations also support the existence of an express license, i.e., the written invoices by which Potkonjak requested payment for creating the ALGO video. (FAC at ¶ 53).

this Court to infer from this evidence that he must have believed in good faith (albeit mistakenly) that he owned some right associated with the video. This Court should not consider these additional factual assertions at all on a 12(b)(6) motion to dismiss, as they are unrelated to personal jurisdiction and not referenced in the FAC.

But even if this Court does consider these extra-pleading factual assertions, they do not demonstrate good faith, or a lack of bad faith, for the following reasons. First, at the time Crabill uploaded the video, November 2018, he was indisputably still working as a spokesperson for ALGO, and therefore he knew his uploading of an ALGO video was authorized by that role, not by some independent individual right. FAC at ¶ 32-39. His labeling of the video as "ALGO Newport Beach" further demonstrates his understanding that this was an ALGO video, not a Beau Crabill video. Dkt. #32 at Ex. A. It is notable that the exhibit presented by Crabill states the video is now "Unlisted" on YouTube. Dkt. #32 at Ex. A. This means that the video is no longer available to YouTube users through Crabill's channel.[6] Declaration of Eric Kotch (Kotch Decl.) at ¶ 39.  In other words, Crabill uploaded and displayed the video when he was an ALGO spokesperson, and then "unlisted" it after he abandoned that role, demonstrating his understanding and knowledge that ALGO was the owner and only authorized user of the video.

Second, Crabill cannot claim to have believed in good faith that he was the owner of items merely because they were uploaded to the Beau Crabill YouTube channel, because he assigned that channel to ALGO by way of the April 2018 contracts. In the parties' Operating Agreement, Crabill agreed that he "hereby irrevocably assigns and transfers to [ALGO] all of

---

[6] The affidavit of Eric Kotch contains facts related to these issues. Plaintiff offers these facts not to supplement the FAC, but to provide context for Crabill's inappropriate extra-pleading assertions, should the Court consider them at all.

14

[his] right, title and interest in all marketing and educational material… including but not limited to [the] BEAU CRABILL You Tube channel." FAC at ¶ 9 & Ex. A at p. 5 of 13. In the simultaneously executed Sale Agreement, Crabill confirmed that among the materials being transferred to ALGO were "various online marketing channels, including but not limited to a YouTube Channel." FAC at FAC at ¶ 11 & Ex. B at p. 2 of 11.  In other words, Crabill could not have believed he was the owner of the video by virtue of its presence on what he calls his "personal" YouTube channel, because it was not his "personal" channel.

Finally, Crabill's implicit appeals to equity by claiming to be naïve as to copyright law should be rejected in light of his own representations to the contrary. Crabill, while implying his ignorance of copyright law here, frequently purports to lecture his customers on legal issues, including specifically copyright law. Kotch Decl. at ¶ 40.  For example, in a video uploaded by Crabill in January 2019, he opined on the first sale doctrine and international copyright law, advising his customers that "in China and other countries, they don't have copyright laws, meaning they can sell you fake goods" Kotch Decl. at ¶ 40. As a matter of equity, Crabill cannot represent himself to this Court as too naïve to make a knowing misrepresentation under Section 512(f), while simultaneously holding himself out to the public as a copyright expert.

### 3.    This Court has Subject Matter Jurisdiction

Crabill argues that this Court does not have subject matter jurisdiction over this case because of the alternative dispute resolution provision in the parties' Operating Agreement.  The Operating Agreement provides that in the event of a "dispute among the members" that cannot be resolved informally by mutual agreement, the "matter shall be submitted to mediation" on terms and procedures to be arranged by the parties. If mediation does not resolve the issue, "the

15

dispute may be submitted to arbitration." FAC at ¶ 9 & Ex. A § VII(4). Crabill's argument fails for at least four reasons.

First, the Operating Agreement does not require Plaintiff to submit this matter to arbitration. The parties agreed only that they "may" submit their disputes to arbitration, "making these procedures permissible – not mandatory." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.,* No. 14-cv-6016-ER, 2019 U.S. Dist. LEXIS 1144 at \*17-18 (S.D.N.Y. Jan. 3, 2019) (retaining subject matter jurisdiction; party cannot be required to submit matter to arbitration where contract provides that it "may" do so). Therefore, Plaintiff's decision not to submit this dispute to arbitration does not deprive this Court of subject matter jurisdiction. *Id.; see also Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 241 (N.Y.S.D. 2017) (same).[7]

Second, Crabill's claim that the mediation clause of the Operating Agreement was not followed here does not deprive this Court of jurisdiction. "[M]ediation is not arbitration within the meaning of the [Federal Arbitration Act ("FAA")] because it does not produce a final binding result," and therefore mediation may not be compelled pursuant to the Federal Arbitration Act. *Milligan v. CCC Info., Servs.,* 920 F.3d 146, 152 & n. 3 (2d. Cir. 2019) (citing *Advanced Bodycare Solutions, LLC v. Thione Int'l Inc.,* 524 F.3d 1235, 1238-40 (11th Cir. 2008)) (holding that "mediation is not within the FAA's scope" and collecting cases); *accord Heston v. GB Capital Holdings, LLC,* No. 16-cv-912-WQH-RBB, 2016 U.S. Dist. LEXIS 113355 at \*5 (S.D. Cal. Aug. 23, 2016) ("The Court concludes that there is no legal authority for an order to compel

---

[7] The severability clause of the Operating Agreement also anticipates that the agreement may be reviewed by either "a court or arbitrator," further demonstrating that the parties did not intend arbitration to be the sole means of adjudicating a dispute. FAC ¶ 9 & Ex. A at § VII(7).

non-binding mediation").[8] This holding is consistent with the broad purposes of the FAA, because "compelling a party to submit to settlement talks it does not wish to enter and which cannot resolve the dispute of their own force may well *increase* the time and treasure spent in litigation." *Advanced Bodycare Solutions, LLC v. Thione Int'l Inc.,* 5224 F.3d at 1240. For these reasons, "even where a contract expressly makes mediation a condition precedent to litigation, a party's failure to pursue mediation before litigation does not deprive the court of subject matter jurisdiction." *Mark v. Neundorf,* 147 Conn. App. 485, 492 (Conn. App. Ct. 2014) (reviewing Connecticut cases).

Third, even though this Court has discretion to stay a case pending the outcome of a mediation, it should not exercise that discretion here. The Operating Agreement provided for the parties to submit "any dispute" to mediation after trying to resolve it informally. FAC at ¶ 9 & Ex. A § VII(4). Crabill's claim that Plaintiff's video was violating his rights was such a "dispute." However, he neither attempted an informal resolution nor did he submit the issue to mediation. Instead, he initiated a legal process pursuant to the DMCA. Even while the present matter has been pending, he has continued to send additional takedown notices to other platforms without attempting informal resolution or mediation. FAC at ¶¶ 78-79. Having himself ignored the procedure set forth in the Operating Agreement, Crabill now asks this Court to enforce that

---

[8] The exception to this principle, not relevant here, is where the alternative dispute procedure in the parties' contract is not labeled as "arbitration" but nevertheless closely resembles arbitration because it provides for submission of the dispute to a third party for a binding resolution. *Advanced Bodycare Solutions, LLC v. Thione Int'l Inc.,* 5224 F.3d at 1239 (citing *AMF, Inc. v. Brunswick Corp.,* 621 F.Supp. 456, 457 (E.D.N.Y. 1985)); *see also Superior Site Work, Inc. v. Triton Structural Concrete, Inc.*, 2013 U.S. Dist. LEXIS 104300 at *12 (E.D.N.Y. July 24, 2013) (citing *McDonnell Douglas Finance Corp. v. Penn. Power & Light Co.,* 858 F.2d 825, 830 (2d Cir. 1988)).

17

procedure only as to Plaintiff, further delaying the relief to which Plaintiff is entitled while the harm caused by the fraudulent takedown notices continue to fester. Such a result would be inequitable and contrary to the principles of contract law. *Rochester Cmty. Individual Practice Ass'n v. Finger Lakes Health Ins. Co.,* 281 A.D.2d 977, 979 (N.Y. App. Div. 2001) ("A condition precedent is linked to the implied obligation of a party not do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract") (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933)); *A.H.A. Gen. Constr. v. New York City Hous. Auth.,* 92 N.Y.2d 20, 31 (1998) ("a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition").

Finally, the non-submission of this dispute to mediation has become moot since the initial complaint was filed because, as Crabill acknowledges, the parties have since that time engaged in a full day mediation. Kotch Decl. at ¶41. The parties submitted to mediation their contractual disputes and "additional claims, including breach of fiduciary duty, infringement of intellectual property and defamation." Kotch Decl. at ¶41.[9] Plaintiff provided the original Section 512(f) complaint in this case to the mediator, demanded the withdrawal of the takedown notices as one of its requirements for settlement, and discussed the takedown notices during the mediation in an (ultimately futile) attempt to resolve the entire dispute between the parties. Kotch Decl. at ¶41. Consequently, Crabill's demand that the parties engage in additional wasteful and futile

---

[9] This background information on the mediation is necessitated by the materially incorrect statement in the Motion to Dismiss (which is not supported by any allegation, fact or citation) that only contract claims were submitted to mediation. Motion to Dismiss at pp. 4-5.

18

mediation is moot. *Holick v. Cellular Sales of N.Y., LLC,* 559 Fed. Appx. 40, 42 (2d Cir. 2014)
(dispute over whether the parties were required to mediate rendered moot after actual mediation).

    **4.**    **This Court has Personal Jurisdiction**

    A.    Facts Demonstrating Personal Jurisdiction Over Crabill in New York

The allegations of the FAC (FAC at ¶¶ 9-12, 14-45), verified by the Declaration of Eric
Kotch, demonstrate that Crabill has purposely availed himself of the opportunity to do business
in New York. Among other contacts with the jurisdiction, Crabill:

- Entered into business with New York citizens to co-found, acquire minority ownership of,
  and serve as agent for ALGO, a company headquartered in New York that maintained a staff
  based in New York, with whom Crabill regularly communicated, including communications
  into New York about the ALGO video at the center of this dispute. Kotch Decl. at ¶¶ 1-2, 5,
  8, 23, 33.

- Sold the assets of his prior business to the New York-based ALGO, pursuant to a Sales
  Agreement that recites that it is governed by New York law and that lists ALGO's place of
  business as New York. Kotch Decl. at ¶ 3.

- Licensed his name and image to the New York-based ALGO, pursuant to a License
  Agreement that recites that it is governed by New York law and that lists ALGO's place of
  business as New York. Kotch Decl. at ¶ 4.

- Physically traveled to New York on multiple occasions, on trips planned by ALGO and at
  ALGO's expense, to participate in extensive business meetings with ALGO's New York

19

Staff and others involved in the ALGO business, and on one occasion to consummate the Operating Agreement by delivering his capital contribution. Kotch Decl. at ¶¶ 10-22.[10]

- During these trips, conducted webinars and live events for customers in and from New York. Kotch Decl. at ¶¶ 7, 11, 16, 19, 26-32.

- Did business and solicited business with customers in New York on behalf of ALGO and himself, including New York customers on ALGO's customer list who purchased ALGO services, customers who attended live events in New York at which Crabill spoke and/or appeared in person, and customers with whom he interacted on social media. Kotch Decl. at ¶¶ 7, 9, 12, 16-17, 34.

- Held himself out in marketing communications to customers and press releases as an agent and founder of the New York-based ALGO, and provided ALGO's New York address as his contact information in communications to thousands of customers. Kotch Decl. at ¶¶ 6, 24.

- Encouraged customers, including customers based in New York, to purchase services from him by entering into contracts with ALGO; contracts which represented to customers that ALGO, the company providing products and services through beaucrabill.com, was located in New York; that the contracts were governed by New York law; that all notice required under the terms of the contracts was to be provided to ALGO's headquarters address in New York; and that provided a New York phone number (with an "845" area code) as the customer support line for beaucrabill.com. Kotch Decl. at ¶¶ 7, 25, 32.

---

[10] Crabill's initial deceptive affidavit to this Court claimed that he made these trips to "hang out with … friends." Kotch Decl. at ¶ 21.

- Committed tortious activity aimed at the New York-based ALGO and its New York Staff, causing injury in New York, including the loss of New York customers. Kotch Decl. at ¶ 38; FAC at ¶¶ 46-51.

  B. <u>This Court has Personal Jurisdiction Over Crabill</u>

  This Court clearly has personal jurisdiction over Crabill pursuant to C.P.L.R. § 302. "Jurisdiction is established under [C.P.L.R.] Section 302(a)(1) where (a) the defendant has transacted business within the state; and (b) the claim arises out of that activity." *Hd Brous & Co. v. Synthesys Secure Techs.*, 229 F.Supp.2d 191, 194 (E.D.N.Y. 2002) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999)). To survive a Rule 12(b)(2) motion to dismiss, the plaintiff "need only allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)*.* The court must construe the pleadings and affidavits in the plaintiff's favor. *Id.*

  "Transacting business" within the meaning of the long-arm statute, "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F.Supp. 3d 675, 684 (S.D.N.Y. 2014) (internal quotation marks omitted). The test "requires only a minimal quantity of activity," *Hd Brous & Co. v. Synthesys Secure Techs.*, 229 F.Supp.2d at 194, and thus a "single transaction in New York w[ill] satisfy the statutory requirement." *O'Mahoney v. Susser*, 531 F. App'x 39, 41 (2d Cir. 2013) (citing *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 651 (N.Y. 1977)); *Ginsberg v. Gov't Props. Tr., Inc.*, No. 07-cv-00365, 2007 U.S. Dist. LEXIS 75771, at *39 (S.D.N.Y. Oct. 10, 2007) ("proof of one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never enters the state, so long as the defendant's activities in New York were purposeful"). Among the factors Courts have cited to support jurisdiction under Section

21

302(a)(1) are the existence of a choice-of-law provision in a contract designating New York law, *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 366-67 (2d Cir. 1986); the defendant's knowledge that services under a contract would be performed in New York, *Nat'l Westminister Bank PLC v. Retirement Care Associates, Inc.,* No. 98-cv-6023-JSM, 1999 U.S. Dist. LEXIS 5807 at \*5-6 (S.D.N.Y. Apr. 23, 1999); the defendant's telephone calls and letters to the plaintiff located in New York, *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir. 1997), and whether the defendant has an on-going contractual relationship with a New York company. *Orchard Yarn & Thread Co. v. Schaub,* No. 17-cv-2477-JMF, 2018 U.S. Dist. LEXIS 94790 at \*3-4 (S.D.N.Y.  June 5, 2018). Additionally, "a meeting in New York, even one not intended to result in the formation of a contract, [can be] sufficient for the exercise of long-arm jurisdiction." *Ginsberg v. Gov't Props. Tr., Inc.*, No. 07-cv-00365, 2007 U.S. Dist. LEXIS 75771, at \*42.

Here, Crabill co-founded and established an ongoing relationship with a New York-based company; entered into contracts with that company governed by New York law; traveled to New York for extensive business meetings to plan the business of that company; regularly communicated with the New York-based staff by phone, email and text; performed services for that company in New York, including interacting with New York customers;[11] and facilitated contracts for that company with New York customers (contracts also governed by New York law). These numerous contacts with New York far exceed the single transaction needed to find jurisdiction proper in New York, and far exceed the contacts that other Courts have found are sufficient to confer specific personal jurisdiction under the statute. *E.g., Schutte Bagclosures Inc.*

---

[11] Crabill's father, expressly acting as his agent, also performed services in New York under the contracts with ALGO. Kotch Decl. at ¶¶ 26-32.

22

*v. Kwik Lok Corp.*, 48 F. Supp. 3d at 684 (quoting *Best Van Lines, Inc., v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007)) (conducting marketing and promotion of product in New York); *see also Gale v. Smith & Nephew PLC*, No. 12-cv-3614-VB, 2015 U.S. Dist. LEXIS 10885, at *6 (S.D.N.Y. Jan. 20, 2015) (expectation that defendant's product would be placed in stream of commerce and shipped and used in New York, combined with recruiting New York physician to market product); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (enforcing patent rights through New York attorney and seeking investments in New York by telephone); *Hd Brous & Co. v. Synthesys Secure Techs.*, 229 F.Supp.2d at 195 (entering contract to be performed in New York, spending one day in New York and phone calls into New York); *O'Mahoney v. Susser*, 531 F. App'x 39, 41 (2d Cir. 2013) (making phone calls to and having one meeting in New York to secure a loan).[12]

The second of half of the Section 302(a)(1) test requires that the present action be "sufficiently related" to the defendant's transacted business [in New York] such "that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendant[] to suit in New York." *Hd Brous & Co. v. Synthesys Secure Techs.*, 229 F.Supp.2d at 195 (citing *Hoffritz v. Cutlery, Inc., v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir. 1985)). To meet this requirement, "the plaintiff need only show some articulable nexus between the business transacted and the

---

[12] In *O'Mahoney,* the defendant attempted to explain away his business meeting in New York by referring to it as a "social contact for a drink." *O'Mahoney v. Susser*, 531 F. App'x at 41. Here, Crabill submitted a deceptive affidavit to this Court mischaracterizing his business meetings in New York (organized and paid for by ALGO) as "hang[ing] out with friends." Kotch Decl. at 21. To the extent there is any doubt about the true nature of these trips, the Court should do as the *O'Mahoney* Court did and construe the affidavits in the light most favorable to the plaintiff. *Id.*

23

cause of action sued upon." *Id.* (citing *Beacon Enters., Inc., v. Menzies,* 715 F.2d 757, 764 (2d Cir. 1983)).

Here, the present dispute arises from the parties' contractual relationship, through which they formed a company based in New York, conducted business in New York, put on public events in New York, serviced New York customers, and entered contracts with New York choice of law provisions. In his attempts to justify his takedown notice, Plaintiff himself has relied on the subject matter of one of those New York contracts, the Licensing Agreement governing the use of his image. FAC at Ex. F. Moreover, as part of his ongoing relationship with the New York Staff, Crabill communicated into New York about the very video in question when he called ALGO in New York to complain about the videographer's work. Kotch Decl. at ¶ 8. He then issued his takedown notice knowing it would effect ALGO in New York. A clear nexus between Crabill's New York contacts and the cause of action exists. *See, Hd Brous & Co. v. Synthesys Secure Techs.*, 229 F.Supp.2d at 195 (sufficient nexus where dispute and New York contacts pertain to same contractual relationship).

The exercise of jurisdiction over Crabill also comports with due process. Crabill's contacts with New York are sufficient to satisfy the long-arm statute and the "minimum contacts" inquiry. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945); *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Moreover, it is more than reasonable to subject Crabill to New York, not only because of his transaction of business in New York related to ALGO and this dispute, but also because (1) he held himself out to customers as founder and agent of a New York business, provided New York contact information to them, and encouraged them to enter into contracts governed by New York law; and (2) he also runs another business (unrelated to

24

5016131.4

ALGO and discussed below) which involves additional New York contacts. Kotch Decl. at ¶¶ 35-37

In addition to jurisdiction under §302(a)(1), this Court also has general jurisdiction over Crabill pursuant to § 301 and specific jurisdiction pursuant to § 302(a)(3), which provides for jurisdiction over out-of-state defendants that commit tortious acts causing injury to persons within the state. These statutes require a showing that the Crabill is "doing business" in New York. To the extent that Crabill's New York contacts related to the ALGO business do not in an of themselves meet this requirement, Crabill also runs a completely separate business selling products online. Kotch Decl. at ¶ 35. In his Declaration to this Court, Crabill boasts of the "tremendous success of this business," which sells "millions of dollars of products." (Dkt. #32 at ¶¶ 3-4). Crabill has "many" suppliers in New York for this business, has conducted business meetings in New York related to this business, has spent thousands of dollars in New York related to this business, and in addition the FAC alleges that this business serves New York customers. Kotch Decl. at ¶¶ 35-37; FAC at ¶¶ 42-45. Therefore, if the Court is not inclined to hold that specific jurisdiction under §302(a)(1) is proper based on the contacts related to the ALGO business, Plaintiff requests the opportunity to take discovery on Crabill's additional New York contacts related his other business. *See Ginsberg v. Gov't Props. Tr., Inc.*, No. 07-cv-00365, 2007 U.S. Dist. LEXIS 75771, at *10 ("A district court may permit a plaintiff to engage in limited jurisdictional discovery.").

### 5.    Conclusion

For the foregoing reasons, the Motion to Dismiss should be denied.

25

Dated: July 19, 2019                    Respectfully submitted,
                                        */s/ Peter A. Sullivan*
                                        Peter A. Sullivan (PAS4704)
                                        FOLEY HOAG LLP
                                        1301 Avenue of the Americas, 25th Floor
                                        New York NY 10019
                                        Tel: 646-927-5500
                                        Fax: (646) 927-5599
                                        psullivan@foleyhoag.com

                                        David A. Kluft
                                        (*pro hac vice* motion to be filed)
                                        FOLEY HOAG LLP
                                        155 Seaport Boulevard
                                        Boston, MA 02210
                                        Tel: 617-832-1000
                                        Fax: 617-832-7000
                                        dkluft@foleyhoag.com

                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed through the Court's electronic filing system, which will automatically send copies to counsel for the parties.

                                        /s/Mital Patel
                                        Mital Patel

26

5016131.4