UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BOSS WORLDWIDE LLC d/b/a ALGO
ONLINE RETAIL,

         Plaintiff,

v.

BEAU CRABILL,

         Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 2363 (VB)

Briccetti, J.:

      Plaintiff Boss Worldwide LLC brings this action against defendant Beau Crabill, alleging misrepresentation under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).

      Now pending is defendant's motion to dismiss the first amended complaint ("FAC") pursuant to Rule 12(b)(1), (2), and (6). (Doc. #30).

      For the following reasons, the Court construes the motion to dismiss as one to compel arbitration, GRANTS the motion to compel arbitration, and DENIES WITHOUT PREJUDICE the motion to dismiss.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The following factual background is drawn from the FAC and the parties' submissions in support of and in opposition to the pending motion.[1]

---

[1] "In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), . . . the court applies a standard similar to that applicable for a motion for summary judgment," Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003), and courts therefore consider materials outside the complaint, see, e.g., Begonja v. Vornado Realty Tr., 159 F. Supp. 3d 402, 405, n.1 (S.D.N.Y. 2016).

1

I.  The Parties' Business Relationship

The allegations of the FAC can be summarized as follows:

On April 6, 2018, Asymergy Corporation and defendant Crabill, both of whom provide seminars and instructional materials that teach customers how to sell products online, executed an agreement (the "Operating Agreement") that formed Boss Worldwide LLC d/b/a ALGO Online Retail ("ALGO"). ALGO and Crabill initially had an amicable business relationship.

However, in December 2018, defendant expressed unhappiness about his relationship with plaintiff. In January 2019, plaintiff proposed an agreement that would have allowed defendant to withdraw from plaintiff. Instead, defendant "decided to engage in self-help and grab the entire business for [himself]."[2] (Doc. #27 ("FAC") ¶ 48). According to the FAC, on January 13, 2019, without notice to plaintiff, defendant cut off plaintiff's access to certain online products; diverted revenue that should have gone to plaintiff's account to a different account defendant controlled; misappropriated customer information for defendant's own use and then deleted that information from a shared online account; removed plaintiff's name from the website (beaucrabill.com) through which the parties conducted their business; resumed doing business as "All Out Raw LLC," the company through which defendant conducted his business prior to the formation of ALGO, in violation of the defendant's non-compete obligations under the Operating Agreement; and later "defamed" plaintiff to third party sales staff and to plaintiff's customers. (Id. ¶¶ 48-51).

---

[2]  On April 26, 2019, plaintiff filed a separate action against defendant in Supreme Court, Rockland County, alleging breach of contract and tort claims.

II.  The DMCA Notice

Plaintiff asserts that on March 3, 2019, it received an email from YouTube.com stating that defendant had filed a takedown request pursuant to the DMCA, claiming that one of plaintiff's promotional videos contained copyrighted content plaintiff was not authorized to use, such that YouTube was required to remove the video from YouTube. According to plaintiff, this video was created with footage from a live event plaintiff hosted on November 3-4, 2018. Plaintiff alleges the statement defendant had to provide to YouTube to issue the takedown request contained misrepresentations and inaccurate information, in violation of 17 U.S.C. § 512(f). Plaintiff claims it submitted a counter-notification to YouTube but as of the date of the FAC's filing, the video had not been restored. (FAC ¶¶ 69-74).[3]

According to the parties' briefing, they attempted to resolve the issues stemming from the breakdown of their business relationship at a mediation on March 28, 2019. According to plaintiff, the mediation covered contractual disputes and "additional claims, including breach of fiduciary duty, infringement of intellectual property and defamation." (Doc. #35 ("Pl. Mem.") at 18). Plaintiff also states it provided the DMCA complaint in this case to the mediator, "demanded the withdrawal of the takedown notices as one of its requirements for settlement, and discussed the takedown notices during the mediation in an (ultimately futile) attempt to resolve the <u>entire</u> <u>dispute</u> between the parties." (Id.) (emphasis added).

---

[3]  In the FAC, plaintiff also alleges defendant took further actions to force the removal of plaintiff's other online postings, including by issuing additional takedown notices; these other actions are not included in the FAC's one DMCA cause of action. Plaintiff states in the FAC that it would seek to amend the complaint if in future, it was harmed by these other actions by defendant. (FAC ¶ 78).

3

## DISCUSSION

I. <u>Implied Motion to Compel Arbitration</u>

Depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration. See <u>Wabtec Corp. v. Faiveley Transp. Malmo AB</u>, 525 F.3d 135, 139–140 (2d Cir. 2008). The motion must either "explicitly or implicitly ask[] the court to order arbitration." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 230 (2d Cir. 2016).[4] When a movant manifests "an intent . . . to compel arbitration," district courts may "treat[] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." <u>Id</u>. at 230.

Here, defendant's motion to dismiss manifests an intent to compel arbitration. Although he frames his argument regarding the arbitration clause as a motion to dismiss for lack of subject matter jurisdiction, defendant argues the DMCA claim must be arbitrated, sets forth a motion to compel standard, and engages in a lengthy analysis of whether or not arbitration should take place here.

Accordingly, the motion to compel standard applies.

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.   Standard of Review[5]

"The Federal Arbitration Act ('FAA') reflects a legislative recognition of the desirability of arbitration as an alternative to the complications of litigation." Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019). The FAA, "reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts." Id. To achieve these goals, the FAA provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000)).

III.   Motion to Compel

The Court concludes that plaintiff's DMCA claim falls within the scope of the arbitration clause in the Operating Agreement.

---

[5]   "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007); see also Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC), 563 B.R. 756, 766 (Bankr. S.D.N.Y. 2016) (addressing motion to compel arbitration before motions to dismiss for lack of subject matter or personal jurisdiction). Because the Court grants the motion to compel arbitration, it does not reach defendant's motion to dismiss for lack of personal jurisdiction and failure to state a claim pursuant to Rule 12(b)(2) and (6).

A.     Legal Standard

In reviewing a motion to compel arbitration, a court must determine: (i) whether the parties agreed to arbitrate; (ii) the scope of that agreement; and (iii) if federal statutory claims are at issue, whether Congress intended those claims to be nonarbitrable. Daly v. Citigroup Inc., 939 F.3d at 421. Consistent with the strong federal policy favoring arbitration as an alternative means of dispute resolution, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitrability. In doing so, a court "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.

The federal policy favoring arbitration "requires [courts] to construe arbitration clauses as broadly as possible." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). To determine if a dispute falls within the scope of an arbitration agreement, a court "should classify the particular clause as either broad or narrow." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004). When "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). Indeed, if the arbitration clause is broad, "it is presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular

provisions of the contract which contains the arbitration clause." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172.

Moreover, regarding the arbitrability of federal statutory claims, courts have long considered arbitration to be "presumptively an appropriate and competent forum." MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 110 (2d Cir. 2006) (citing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 232–33 (1987)). Thus, when Congress has not clearly precluded arbitration, statutory claims may be arbitrated "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000).

B.  Application

Here, the Operating Agreement contains the following arbitration provision, which states in relevant part:

> In any dispute over the provisions of this operating agreement and in other disputes among the members, if the members cannot resolve the dispute to their mutual satisfaction, the matter shall be submitted to mediation. . . . If good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association.

(FAC, Ex. A at ¶ VII(4)).

As to the first prong under Daly v. Citigroup Inc., the parties do not dispute the Operating Agreement contains a valid agreement to arbitrate.

As to the second prong, the DMCA claim falls within the scope of the arbitration clause. The relevant language in the clause—namely that "any dispute over the provisions of this operating agreement and in other disputes among the members" (FAC, Ex. A at ¶ VII(4)) (emphasis added)—creates a broad scope of arbitration and encompasses all claims that arise from the parties' obligations under the Operating Agreement, including the DMCA claim.

7

Moreover, taking into account the FAC's factual allegations as a whole, including plaintiff's allegations regarding other actions defendant has taken since their business relationship ended, it is clear the DMCA claim brought in the FAC is part of the aftermath stemming from the termination of plaintiff and defendant's business relationship. Indeed, the parties have attempted to resolve the DMCA claim in mediation alongside other issues that have arisen as a result of that termination. The DMCA claim is clearly a "dispute," and there has been an effort to mediate. Thus, by the explicit terms of the arbitration clause, the DMCA claim falls squarely within the scope of the clause.

Finally, there is no indication Congress precluded DMCA claims from arbitration. See Packeteer, Inc. v. Valencia Sys., Inc., 2007 WL 707501, at *3 (N.D. Cal. Mar. 6, 2007) (rejecting argument that "Congress conferred exclusive jurisdiction over copyright and DMCA claims on the federal courts"); cf. McMahan Sec. Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 89 (2d Cir. 1994) (finding no bar to arbitration of plaintiff's federal copyright claims) (citing Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1199 (7th Cir. 1987) ("We hold that federal law does not forbid arbitration of the validity of a copyright, at least where that validity becomes an issue in the arbitration of a contract dispute.")).

Plaintiff argues that because the "parties agreed only that they 'may' submit their disputes to arbitration" (Pl. Mem. at 16), arbitration is not mandatory. However, the mere use of the word "may" does not allow the parties to avoid arbitration. See, e.g., Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 204 n.1 (1985) ("The use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures."); Local 771, I.A.T.S.E., AFL–CIO v. RKO Gen., Inc. WOR Div., 546 F.2d 1107, 1115-16 (2d Cir. 1977) (holding that agreement stating "the parties may submit to arbitration"

8

triggers mandatory arbitration and that "the word 'may' [does not] impl[y] that the parties had the option of invoking some remedy other than arbitration"). Indeed, absent such an interpretation, the arbitration clause would be superfluous.

Accordingly, plaintiff's DMCA claim is arbitrable by the terms of the Operating Agreement.

IV. Stay

Upon determining an arbitration agreement is valid and the claim before it is arbitrable, the Court must stay or dismiss further judicial proceedings and order the parties to arbitrate. See Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). When, as here, a stay is not requested, the Court "has discretion in determining whether to stay or dismiss the case pending arbitration." Worthington v. JetSmarter, Inc., 2019 WL 4933635, at *8 (S.D.N.Y. Oct. 7, 2019).

Although the parties have not requested a stay, a stay will provide for a more "expeditious resolution of the dispute" than dismissal. Worthington v. JetSmarter, Inc., 2019 WL 4933635, at *8. Accordingly, this matter is stayed pending the completion of arbitration.

**CONCLUSION**

The motion to dismiss is DENIED WITHOUT PREJUDICE. The motion to compel arbitration is GRANTED. The parties are ORDERED to arbitrate this dispute pursuant to the terms of the Operating Agreement.

This action is hereby STAYED pending arbitration.

The Clerk is instructed to (i) terminate the motion (Doc. #30), and (ii) administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[6]

Dated: March 16, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[6] See Zimmerman v. UBS AG, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), appeal dismissed, 789 F. App'x 914, 915-16 (2d Cir. 2020) (summary order) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").